**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Sean Jervitt HOPKINS, a/k/a Sean Jackson, Defendant–Appellant.**

No. 01–4581.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 26, 2002.

Decided Oct. 23, 2002.

**ARGUED:** Timothy Joseph Sullivan, Sullivan & Sullivan, College Park, Maryland, for Appellant. Ronald Jay Tenpas, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States Attorney, James M. Trusty, Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge, and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge WIDENER and Senior Judge HAMILTON joined.

## OPINION

WILKINSON, Chief Judge.

Defendant Sean Jervitt Hopkins appeals the judgment of the United States District Court for the District of Maryland sentencing him to life imprisonment for various offenses stemming from his use of a gun during a high speed chase through the streets of Prince George's and Montgomery Counties, Maryland. He raises numerous assignments of error, none of which have merit. We thus affirm the judgment.

### I.

On March 17, 1999, FBI Special Agent George Dysico and Deputy United States Marshal Justin Vickers were conducting surveillance of an apartment complex in Greenbelt, Maryland as part of an effort to locate and apprehend fugitive Sean Jervitt Hopkins. After seeing Hopkins' vehicle approach and then quickly flee the complex, the officers activated their emergency lights and began pursuit. A high-speed chase ensued during which Hopkins drove erratically around the I–495 beltway and through several residential neighborhoods. Hopkins consistently drove twenty to thirty miles above the speed limit, cut off other drivers, and wove in and out of traffic. According to the officers, Hopkins brandished a pistol and waved it at them through the window of his car. At several points during the chase, Hopkins veered to one side of the road, shot at the officers over the roof of his car, and then veered back to the other shoulder to throw them off his trail.

The chase finally ended when Hopkins' vehicle struck first a Montgomery County school bus, then a telephone pole, and then caught fire. At this point, Dysico and Vickers freed Hopkins from the car and placed him under arrest, noticing for the first time that two small children had been in the car during the violent chase. Dysico rescued the children from the car, injuring his hand in the process.

The officers searched Hopkins and found he was carrying 96 rounds of loose ammunition, a police scanner radio, and 34 individual baggies containing a substance later confirmed to be cocaine base. A search of the car revealed a Sig Sauer .380 semi-automatic pistol with a partially loaded clip. Subsequent searches of the area failed to recover any shell casings from Hopkins' gun, but a fresh groove in the roof of Hopkins' car, as well as a crack in the windshield of the officers' car, indicated that bullets were fired from Hopkins' car at the officers' vehicle.

On May 24, 1999, a grand jury returned a five count indictment against Hopkins

based on the March 17 car chase. Counts One and Two of the indictment alleged that Hopkins forcibly assaulted and resisted federal agents Dysico and Vickers with a deadly and dangerous weapon in violation of 18 U.S.C. § 111(b). Count Three alleged use of a firearm in a crime of violence in violation of 18 U.S.C. § 924(c), and Count Four alleged that Hopkins was a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Lastly, Count Five alleged possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).

A trial was initially scheduled for August 17, 1999, and Hopkins, through his attorney, filed a motion to suppress evidence of his prior convictions on July 30, 1999. Proceedings were then continued in accordance with defendant's request. Defendant filed four additional motions seeking to extend the motions deadline and to delay the motions hearing. On January 3, 2001, the grand jury returned a superseding indictment that amended Count Three to add the conclusion "and in doing so, did brandish and discharge said firearm," amended Count Four to include the phrase "foreign commerce," and amended Count Five to state that the drug involved was cocaine base instead of cocaine powder. On January 24, 2001, Hopkins filed a motion claiming that his statutory right to a speedy trial had been violated, and on January 29, 2001, he filed an additional motion seeking to suppress evidence. These motions were both denied before trial.

On May 4, 2001, following a four day trial, a jury found Hopkins guilty on all five counts. However, the jury limited Counts One and Two to the lesser included offense of forcibly assaulting and resisting a police officer. *See* 18 U.S.C. § 111(a). The lesser included offense instruction was given to the jury at defendant's request.

On June 11, 2001, Hopkins filed a motion for judgment of acquittal as to Counts One, Two, and Three. This motion was denied. At the sentencing hearing, the court found that Hopkins had brandished a firearm in the course of committing the § 924(c) offense and was thus subject to a mandatory minimum sentence of seven years. The court also found, over Hopkins' objection, that Hopkins was a "three strikes" felon pursuant to 18 U.S.C. § 3559(c) and therefore was subject to a mandatory life sentence. The court additionally sentenced Hopkins to serve 36 months imprisonment for each of Counts One and Two and 300 months imprisonment for each of Counts Four and Five. Final judgment of conviction and sentence was entered on July 20, 2001. Hopkins appeals.

## II.

Hopkins contends that it was error for the district court to deny his motion to dismiss the charges against him because the government failed to comply with his statutory and constitutional right to a speedy trial.

## A.

The Speedy Trial Act requires that "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment." 18 U.S.C. § 3161(c)(1). However, the period may be tolled for a variety of reasons, including when the defendant files a pretrial motion, 18 U.S.C. § 3161(h)(1)(F), or when defense counsel requests more time to prepare, 18 U.S.C. § 3161(h)(8)(A). Although nearly two years passed between Hopkins' initial indictment and the commencement of his trial, his statutory right was not violated because the delay was

occasioned almost exclusively by motions and requests from the defendant himself.

■ Hopkins acknowledges that his first motion tolled the speedy trial clock, but he argues that the motion was filed without his authorization. Hopkins raises this contention for the first time in this appeal, though, and it is unsupported by the record. This motion, which requested that evidence of Hopkins' prior convictions be suppressed, was proper and routine for a lawyer representing a client in Hopkins' situation. The government appropriately relied on the motion in assuming that the speedy trial clock was stopped. *See* 18 U.S.C. § 3161(h)(1)(F). Additional delay resulted from Hopkins' filing of several motions to extend the time he had to prepare a defense. Thus again the government had no part in any undue postponement of the trial. Because none of the delay in getting to trial was attributable to the government, it cannot be said to have violated Hopkins' statutory right to a speedy trial. *Cf. United States v. Grimmond*, 137 F.3d 823, 829 n. 7 (4th Cir.1998) (indicating that delay resulting from defendant's own request for trial continuance would not be counted against the government).

### B.

■ Hopkins also complains that the delay in his trial date was unconstitutional. While no definitive time period has been set for compliance with the constitutional stricture on trial delays, the Supreme Court established a four factor test in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine when a defendant's constitutional right to a speedy trial is violated. The factors to be considered are (1) the length of the delay; (2) the reason for the delay; (3) whether defendant timely asserted his right; and (4) whether delay prejudiced

defendant's case. *Id.* at 530, 92 S.Ct. 2182. While Hopkins contends, with little explanation, that these factors weigh in favor of his claim, they in fact strongly indicate no infraction of Hopkins' constitutional right.

■ First, the two year delay before trial was not uncommonly long, especially in comparison with *Barker* where no speedy trial violation was found even though more than five years had elapsed since arrest. *Id.* at 533, 92 S.Ct. 2182. Second, the delay was occasioned almost exclusively by requests from the defendant for more time to prepare his case or for medical treatment outside of the district. The district court correctly found that the government was not at fault for such delays. *See Grimmond*, 137 F.3d at 829 n. 7. Third, the defendant did not timely assert his speedy trial right, waiting instead until just five days before trial to raise the issue for the first time. Lastly, and most importantly, the defendant has not specified how his case was in any way prejudiced by the delay. Hopkins has not shown, or even argued, that any evidence was damaged or lost, that any witnesses could not be found, or that his case was harmed in any manner by the delay. Because all four *Barker* factors weigh against Hopkins' claim, the district court did not err in finding that his right to a speedy trial was not violated.

### III.

Hopkins further contends that the district court erred in permitting the government to introduce expert testimony by police officer Lawrence Phillips regarding narcotics trafficking in this case. However, Phillips' testimony fits well within the requirements for expert witnesses detailed in Federal Rule of Evidence 702:(1) that the expert have "specialized knowledge [that] will assist the trier of fact"; (2) that the expert be qualified to testify because

of "knowledge, skill, experience, training or education"; (3) that the witness base his testimony upon "sufficient facts or data"; and (4) that the witness has used "reliable principles and methods" and "applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

 A trial judge's decision on whether to admit testimony of this nature is given the broadest degree of latitude. *See United States v. Dorsey*, 45 F.3d 809, 814 (4th Cir.1995). The government established during voir dire that Phillips had extensive experience and training in narcotics investigations. Phillips had been a Montgomery County police officer for ten years and had been a police drug investigator for seven years. Additionally, Phillips received extensive formal training in conducting narcotics investigations. During his testimony, Phillips explained how the materials found in Hopkins' car led him to believe, based on his experience and training, that Hopkins was involved in drug distribution. He testified that the separation of the crack cocaine rocks into separate baggies, as well as the denominations of bills Hopkins was carrying and his possession of a pager, digital scale, and small caliber weapon all led Phillips to conclude that Hopkins was a drug dealer. This testimony both assisted the jury in determining Hopkins' guilt and was properly based on Phillips' observations of the evidence in this case. The district court therefore did not abuse its discretion in allowing this evidence under Rule 702.

## IV.

 Hopkins next argues that the government violated his Fifth Amendment right not to be convicted for unindicted crimes. He rests this claim on the fact that he was convicted of violating 18 U.S.C. § 111(a) but was indicted only for violation of 18 U.S.C. § 111(b). But, "a defendant in a criminal case cannot complain of error which he himself has invited." *United States v. Herrera*, 23 F.3d 74, 75 (4th Cir.1994) (internal citation and punctuation omitted). Hopkins specifically requested a jury instruction on the lesser included § 111(a) offense, and he cannot now claim that this instruction was improper. Here, as in *Herrera*, not only did the defendant explicitly request this very instruction, but "he did so as a matter of sound trial strategy." *Id.* at 76. And, as in *Herrera*, any error in the instruction did not taint "the integrity of the judicial process" so as to require a new trial on the basis of an instruction that defendant himself requested. *Id.* (internal citation omitted).

In fact, conviction for the lesser included felony offense was not error at all. The Federal Rules of Criminal Procedure expressly anticipate that a "defendant may be found guilty of an offense necessarily included in the offense charged." Fed.R.Crim.P. 31(c); *see also Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Here, each and every element of § 111(a), forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with an officer, is incorporated within § 111(b), forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with an officer using a deadly or dangerous weapon. Because each element of § 111(a) was necessarily charged in the indictment under § 111(b), Hopkins' Fifth Amendment claim is without merit.

## V.

 Next, Hopkins argues that his two 18 U.S.C. § 111(a) convictions are duplicative and that one of them should therefore be set aside. Hopkins correctly notes that a single act may only give rise to a single conviction. *United States v.*

*Burns,* 990 F.2d 1426, 1438 (4th Cir.1993). However, the Supreme Court has specifically held that while a single shot fired at multiple federal officers constitutes only a single offense, multiple shots may support multiple convictions. *Ladner v. United States,* 358 U.S. 169, 178 & n. 6, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958). The evidence presented by the government shows that Hopkins waved his gun at the officers at several points during the chase and shot at them on at least two occasions, both as he drove and as he was stopped in Montgomery County. Witness Nadia Richards testified specifically that after Hopkins hit the school bus, he "fired more than twice" at the officers. Thus, Hopkins engaged in more than one act of forcibly assaulting and resisting a federal officer, and the district court properly found that Counts One and Two were not duplicative.

## VI.

Hopkins further alleges that the district court erred in denying his post-trial motion for judgment of acquittal on his § 924(c) offense because the government failed to prove all of the elements of the charged offense.

## A.

Hopkins first asserts that when the predicate offense to § 924(c) is separately charged in the indictment, it must be proven beyond a reasonable doubt for the § 924(c) conviction to stand. The indictment returned by the grand jury on Count III charged that Hopkins had used a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c), and alleged that this crime of violence was an 18 U.S.C. § 111(b) offense as set out in Counts One and Two of the indictment. Defendant therefore asserts that in order to convict him under 18 U.S.C. § 924(c), the jury was required to find that Hopkins

had violated 18 U.S.C. § 111(b), and not merely the lesser included offense of forcibly assaulting and resisting under 18 U.S.C. § 111(a). Hopkins insists that while the government need not have linked his § 924(c) offense to another specific crime in the indictment, *United States v. Randall,* 171 F.3d 195, 208 (4th Cir.1999), because it did link the charges, the § 924(c) conviction cannot stand without a conviction under § 111(b).

Hopkins' reliance on *Randall* is misplaced. In *Randall,* the government attempted to prove an entirely different predicate offense for a § 924(c) conviction rather than providing evidence of the predicate offense for which defendant had been indicted. *Id.* at 205. The court found that this was a constructive amendment of the indictment and was fatal to the conviction. *Id.* at 208–209. Here, the government presented evidence that Hopkins violated § 111(b) in support of his § 924(c) conviction. The fact that the government did not obtain a conviction under § 111(b) as well as under § 924(c) does not mean that the indictment was constructively amended—§ 111(b) was still the predicate offense.

Moreover, a defendant's conviction under § 924(c) "does not depend on his being convicted—either previously or contemporaneously—of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt." *United States v. Crump,* 120 F.3d 462, 466 (4th Cir.1997). In Hopkins' case, the jury was explicitly instructed on § 111(b) as the predicate offense, and the evidence was more than sufficient for the jury to find a violation of each and every element. Thus, even if Hopkins had not formally been convicted of either § 111(a) or § 111(b), the jury could still have found him guilty beyond a reasonable doubt of violating § 924(c) with violation of § 111(b)

as the predicate offense. It is irrelevant to this principle whether or not the § 111(b) offense was separately charged.

The Tenth Circuit has specifically addressed this issue in the context of a § 924(c) conviction. *See United States v. Hill,* 971 F.2d 1461 (10th Cir.1992)(en banc). In *Hill,* the defendant was acquitted on every count of the predicate drug trafficking offense. Nonetheless, the court found that a "defendant need not be convicted of the underlying crime in order to be convicted of § 924(c)." *Id.* at 1464. In fact, "[a] defendant need not even be charged with the underlying crime to be convicted under § 924(c)," so long as the underlying offense is one for which defendant could be prosecuted. *Id.* Because the evidence was sufficient for a rational trier to find that Hill was guilty of the predicate offense, the fact that the jury did not find him guilty of that offense was irrelevant to the § 924(c) calculus. *Id.* at 1469. Here, as discussed in part C below, the evidence was more than sufficient for the jury to reasonably find that Hopkins violated every element of § 924(c). Therefore it is irrelevant that the jury did not find in some other count that the same evidence sufficiently supported a § 111(b) conviction.

### B.

Hopkins next contends that in convicting him of only the § 111(a) offense of forcibly resisting a federal officer instead of the § 111(b) offense of forcibly resisting with a dangerous and deadly weapon, the jury implicitly found that Hopkins had *not* used a dangerous weapon during the assault. He therefore asserts that the § 924(c) conviction must fail. However, the Supreme Court has found that "inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense." *United States v. Powell,* 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). The Court reasoned that it is just as likely that "the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Id.* Thus, such seemingly inconsistent conclusions should not be set aside as error unless the evidence in the case is insufficient to "support any rational determination of guilt beyond a reasonable doubt." *Id.* at 67, 105 S.Ct. 471. The jury's determination that Hopkins used a gun when he committed the § 924(c) offense was supported by ample evidence, as discussed in the next section. Therefore, his conviction will not be set aside just because the jury may have found in a different count that he had not used a gun when he violated § 111(a).

### C.

Lastly, Hopkins asserts that the government's evidence at trial "failed as a matter of law to establish a sufficient nexus between the § 924(c) charge" and the underlying offenses because the government did not adequately prove that Hopkins used a dangerous and deadly weapon during and in relation to the assault on Dysico and Vickers. The district court correctly found, however, that the evidence was sufficient for a reasonable jury to convict Hopkins of violating § 924(c).

The evidence presented at trial included the testimony of Dysico that Hopkins "fired several shots at" them; the testimony of Vickers that "on several occasions [Hopkins] discharged that weapon, shooting the weapon towards our vehicle and towards us"; and the testimony of two civilian witnesses who saw and heard multiple shots. Additionally, two forensic ex-

perts testified that the indentations in Hopkins' and Dysico's cars were consistent with bullets having been fired from Hopkins' vehicle at the officers. One of these experts also testified to the presence of lead on swabs taken from those indentations, further supporting the contention that the holes were made by bullets. Because this evidence is sufficient to support the greater charge of using a dangerous and deadly weapon while forcibly resisting an officer of the United States under § 111(b), it is also sufficient to support a charge of using a firearm in a crime of violence in violation of 18 U.S.C. § 924(c).[1]

### VII.

■ Hopkins next asserts that the district court improperly allowed the government to introduce evidence during sentencing to determine whether Hopkins was subject to 18 U.S.C. § 3559(c), the recidivist sentencing statute. This provision requires the court to impose a life sentence on any person convicted of a serious violent felony if he has previously been convicted of two other violent felonies or another violent felony and a serious drug offense. The government, at the behest of the district court, introduced new evidence after it had already concluded its sentencing presentation. This evidence consisted of sections of the District of Columbia Criminal Code relating to the statutory maximum penalties associated with Hopkins' two prior narcotics convictions. Hopkins argues that although the sentencing court "is afforded wide latitude in the ex-

ercise of its discretion in this type of matter," when the court is considering a matter as weighty as a life sentence, it should observe a "heightened burden of proof." Therefore, Hopkins suggests that the submission of this additional information violated his due process rights.

■ The court's request for and acceptance of this evidence was well within its discretion. During a sentencing hearing, the wide degree of discretion normally afforded a district court on evidentiary matters is even greater, because the Federal Rules of Evidence do not apply. *United States v. Hassan El,* 5 F.3d 726, 731 (4th Cir.1993); *see also* Fed.R.Evid. 1101(d)(3). A sentencing court may hear any relevant evidence so long as there are sufficient indicia of its reliability. U.S.S.G. § 6A1.3(a). Because the evidence challenged here consisted only of sections of the District of Columbia Criminal Code, there is no question as to its reliability. Therefore, it was not an abuse of the court's discretion to allow the presentation of this evidence to help in resolving a disputed question of law—whether the offenses committed by Hopkins were subject to maximum penalties of at least ten years.[2]

### VIII.

Lastly, Hopkins argues that the district court erred in imposing a sentencing enhancement on him for brandishing a firearm, because the issue of brandishing was not submitted to the jury as required by the Sixth Amendment. The Supreme

---

1. Hopkins makes the related argument that, because his § 924(c) conviction was in error, the district court incorrectly sentenced him to a life term pursuant to 18 U.S.C. § 3559(c) when the necessary predicate offenses did not exist. Because we find that he was properly convicted under § 924(c), his sentence under § 3559(c) was also proper.

2. In fact, the statute does not require that predicate state convictions be subject to a maximum term of imprisonment, so long as the offense would have been punishable under § 401(b)(1)(A) or § 408 of the Controlled Substances Act or § 1010(b)(1)(A) of the Controlled Substances Import and Export Act. *See* 18 U.S.C. § 3559(c)(2)(H)(ii). Thus, the documents were irrelevant even for the purpose for which they were introduced.

Court rejected this same contention in *Harris v. United States,* —— U.S. ——, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). In *Harris,* the defendant, as here, objected to the imposition of a mandatory seven year minimum sentence for brandishing a gun in connection with a drug trafficking offense. Defendant argued that brandishing should be considered an element of a separate offense, and that he was neither indicted nor tried for that offense. *Id.* at 2411. The Supreme Court, however, found that Congress did not intend to make brandishing a separate element of a § 924(c) offense, but rather intended it as a sentencing factor to be addressed by the court. *Id.* at 2412. As such, it need not be "alleged in the indictment, submitted to the jury, or established beyond a reasonable doubt." *Id.* at 2410.

 The use of sentencing factors has been found to be constitutional, so long as the judge still "impose[s] a sentence within a range provided by statute." *Id.* Here, the judicial finding of brandishing did not serve to increase the maximum penalty against Hopkins, but rather served to guide the discretion of the judge in choosing a sentence by setting a mandatory minimum. Hopkins makes no argument that this finding increases the potential maximum penalty against him. Because brandishing is a legitimate sentencing factor and not an element of the crime of forcibly resisting, and because the sentence imposed was within the range allowed by statute, Hopkins' constitutional right was not violated.

### IX.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*