**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 23, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ELMER VERNON GRIFFIN,

Defendant-Appellant.

No. 08-7003
(D.C. No. 6:02-CR-00047-001-FHS)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **PORFILIO**, and **TYMKOVICH**, Circuit Judges.

Defendant appeals from an order revoking his supervised release, based on possession of a dangerous weapon, after he used a pocketknife "in a threatening manner directed towards a DHS [department of humans services] employee and others." R. Vol. 1 at 27. Defendant contends that the district court's reliance on hearsay statements violated due process. We affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

There is little dispute about the basic historical facts. On October 30, 2007, DHS caseworker Vivian Stout and nurse Renee Foust together made a home visit to defendant's mother-in-law, Lillian Crane, who lived with one of her daughters and defendant. Another daughter, Carolyn Barnett, and a grandson, James Davis, were present at the time. The state workers observed bruises on Ms. Crane's limbs and swelling on her face and legs. When they said she needed to go to the hospital and have x-rays done, defendant became very angry. The state workers saw defendant pull a knife from his pocket in a threatening manner and order them out of the house. Mr. Davis then stepped between defendant and the two frightened workers, who hurriedly left followed by Ms. Barnett. The police later arrived, arrested defendant, and took statements from the witnesses. Defendant's probation officer, Jeff Skaggs, also came to the scene and interviewed the witnesses.

Ms. Barnett's written statement to the police did not mention that defendant had a knife, but the statements given by the other three witnesses did:

> [Defendant] immediately became angered and stated "Nobody is taking my mother-in-law anywhere. If she needs to go to the hospital, I'll take her." Then he pulled out a knife from his pocket and told us to leave and leave now. . . . [Mr. Davis] entered the room and stood between me and [defendant], asking him to stop. [Defendant] pulled the knife on [him] and I quickly followed [Ms. Stout] out the bedroom door to outside.

Defendant/Appellant's Addendum of Exhibits (Add.), Ex. 2 (Statement of Vivian Stout), at 1-2.

[Defendant] became very angry [and] pulled a knife from his pocket and told me to leave now. I again tried to explain to him that [Mrs. Crane] needed medical attention (x-ray). [H]e told me he would get her the care she needed and he again told me to leave. He still had the knife in his hand. So I did as he requested and left the apartment.

Add., Ex. 3 (Statement of Renee Foust), at 1.

[Defendant] pulled a pocket knife and told them to "get out of my house." [He] then with the knife in hand made a move towards the state workers. It was then that I ended up between [defendant] and the DHS workers. The women then left and went outside.

Add., Ex. 1 (Statement of James Davis), at 1.

On the basis of these events, defendant was arrested for violating a mandatory condition of his supervised release, which prohibited possession of a dangerous weapon. Specifically, the warrant alleged that "defendant possessed a dangerous weapon, to wit; a pocket knife, using said knife in a threatening manner, threatening Department of Human Service officials in the performance of their duties." R. Vol. 1 at 23.

The government's case at the revocation hearing consisted of the written statements the witnesses gave to the police and testimony from Officer Skaggs relating what the witnesses told him in person at the scene. Defendant complains that admission of this hearsay evidence denied him the opportunity to question these adverse witnesses, without any determination that the interest of justice did not require them to appear, as directed by Fed. R. Crim. P. 32.1(b)(2)(C) and

dictated by the guaranties of due process recognized as applicable to revocation

proceedings in *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972).[1]

Appellate review regarding the written statements is foreclosed by the

invited-error doctrine. We recently summarized the nature and effect of invited

error, which is a species of waiver, distinguishing it from the related principle of

plain error, which is associated, rather, with the idea of forfeiture:

> Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment of a known right. In other words, waiver is accomplished by intent, [but] forfeiture comes about through neglect. Given this distinction, we have held that a party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error; but a party that has *waived* a right is not entitled to appellate relief.

*United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007)

(citations and quotations omitted). In short, plain-error review is available for

forfeited issues, but "waiver bars a defendant from appealing an invited error."

*Id.* Here, when the government offered the witness statements, the court asked

whether the defense had any objection, counsel replied in the negative, and the

---

[1] Although it recognized a qualified right to question adverse witnesses, *Morrissey* also held that the protections afforded in a revocation hearing under the Due Process Clause were not of the same magnitude as the constitutional rights a defendant has at trial. 408 U.S. at 480, 489. Intent on keeping the analysis here within *Morrissey's* limited due-process parameters, the government argues that the Sixth Amendment right of confrontation later enforced with respect to out-of-court statements admitted at trial in *Crawford v. Washington*, 541 U.S. 36 (2004), does not apply in revocation proceedings. We need not decide that question, as defendant explicitly limits his claim to due process.

exhibits were "admitted without objection." R. Vol. 2 at 8. This was not an inadvertent failure to object but rather an explicit and deliberate disavowal of an objection, relied on by the court to admit the statements without further scrutiny—a clear invited-error scenario. *See United States v. Thayer*, 204 F.3d 1352, 1355 (11th Cir. 2000); *United States v. Ahmad*, 974 F.2d 1163, 1165 (9th Cir. 1992); *see also Carrasco-Salazar*, 494 F.3d at 1272-73 (holding counsel's statement that defense "had no objection" to calculation of sentence abandoned prior objection thereto, barring review under waiver/invited-error principle).

Defendant complains that Officer Skaggs supplemented the witnesses' written statements by relating a key detail that they only provided during his interviews. In cross-examining Officer Skaggs, defense counsel touched on the absence of any reference in the written statements as to whether, assuming defendant brandished a pocketknife, its blade was exposed. This prompted Officer Skaggs to reply that the witnesses had told him that defendant had threatened them with an open pocketknife. R. Vol. 2 at 17-18. Defendant contends, again, that admission of this hearsay testimony, without any determination under Rule 32.1(b)(2)(C) that the witnesses' absence from the hearing was consistent with the interest of justice, violated his due process rights under *Morrissey*. He made no objection when this testimony was elicited,

however, so we review only for plain error,[2] i.e., "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cordova*, 461 F.3d 1184, 1186 (10th Cir. 2006) (internal quotation omitted). No such error has been made out here.

Indeed, on closer inspection this hearsay argument, based on the asserted "conflict" between the witnesses' written and oral statements,[3] is simply a red herring. The district court did not base its revocation decision on a particular finding about the position of the knife blade when defendant threatened the state workers. In its decision from the bench, the court never referred to the blade but simply held that defendant violated the dangerous-weapon condition by using the pocketknife to threaten state workers. R. Vol. 2 at 35-36. The later written order

---

[2]    This might even fall within the invited-error bar. There is authority holding that "the admission of out of court statements by a government witness, when responding to an inquiry by defense counsel, creates 'invited error.'" *United States v. Parikh*, 858 F.2d 688, 695 (11th Cir. 1988). As we deny relief on plain-error review in any event, we need not decide whether a party's failure to object to hearsay testimony constitutes invited error if that party inadvertently elicited the hearsay.

[3]    Actually, we see no conflict between the state workers' oral and written statements. An open pocketknife *is* clearly *a knife*, and the interchangeable use of the terms is hardly cause for concern (unless a witness were specifically pressed on one term and used the other by way of distinction—which is speculation with no basis in our record). In contrast, Mr. Davis' testimony, for the defense, was in conflict with his prior written statement. In his statement he said unequivocally that defendant "pulled a pocket knife" and "with the knife in hand made a move towards the state workers," Add. Ex. 1 at 1, while at the hearing he said he could not say for sure whether defendant even had a knife. R. Vol. 2 at 24-25.

did, in its summary of Officer Skaggs' testimony, recite that he testified the witnesses had told him the pocketknife was open, *see* R. Vol. 1 at 27, but when setting out its actual findings in support of revocation the court again spoke only in broad terms of defendant using the pocketknife to threaten the state workers and did not specifically find whether the blade was open, *id*. Defendant does not argue that using a pocketknife (open or closed) to threaten someone is a legally insufficient basis for revocation—nor would we gainsay the district court's determination in that regard—and the record certainly supports the court's finding that defendant engaged in such conduct, under the preponderance-of-the-evidence standard applicable to revocation proceedings pursuant to 18 U.S.C. § 3583(e)(3), *see also Cordova*, 461 F.3d at 1186-88 (upholding constitutionality of standard in revocation proceedings). Under the circumstances, whether defendant had opened the pocketknife when he brandished it to threaten the state workers is immaterial.

We hasten to add that had the district court specifically found on the basis of Officer Skaggs' testimony that the pocketknife was open during the incident and relied on that fact in revoking his supervised release, we still would not reverse its decision on plain-error review even if we held that Officer Skaggs' testimony should have been excluded on hearsay grounds. Given the undeniably threatening and dangerous nature of defendant's use of the knife as described in the (unchallengeable) written statements, we could not conclude that revoking his

supervised release for possession of a dangerous weapon would undermine the fairness, integrity, or public reputation of the proceedings.

In sum, the written statements admitted with defendant's approval are not now subject to challenge, and they are sufficient, without Officer Skaggs' hearsay testimony, to support the decision to revoke his supervised release.

The judgment of the district court is AFFIRMED.

Entered for the Court


John C. Porfilio
Circuit Judge