Hillsborough-southern judicial district
No. 2009-516

THE STATE OF NEW HAMPSHIRE

v.

GARY RICHARD

Argued: June 23, 2010
Opinion Issued: October 6, 2010

*Michael A. Delaney*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*Lisa L. Wolford*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. Following a jury trial in the Superior Court (*Barry*, J.), the defendant, Gary Richard, was convicted on alternative theories of first degree assault and two counts of second degree assault. *See* RSA 631:1, :2 (2007). On appeal, the defendant argues that the trial court erroneously: (1) failed to instruct the jury that the State had the burden to prove beyond a reasonable doubt that he did not act in self-defense; and (2) permitted the victim to testify about dental treatment for his damaged teeth. We affirm.

The jury could have found the following facts. Timothy Richard lived in an apartment in Merrimack with his father (the defendant) and Donna Lalicata, the defendant's fiancée. On April 23, 2008, Timothy arrived home from work at approximately 5:00 p.m., and saw the defendant and Donna arguing outside. The defendant asked Timothy to take Donna's keys and cell phone, and to prohibit her from entering their home. Timothy refused, and the defendant berated him, stating that he was a "piece of crap" and a "low life" who "needed to get a real job."

Throughout the evening, the defendant continued to yell and to insist that Timothy take Donna's keys and cell phone. He also threatened to use "physical force on [Timothy]" if Timothy allowed Donna to enter the home. Annoyed by the defendant's remarks, Timothy went into the defendant's bedroom to confront him. The defendant was sitting on his bed, holding a six to seven foot pole. The defendant testified that he had the pole in his room because he and Donna "were scared about [Timothy] flipping out . . . on us." Timothy told his father that he was going to bed, that if the defendant "want[ed] to use [the pole], [he should] use it . . . now," and to stop threatening him with it. The defendant had consumed alcohol that evening and was slurring his speech, weaving when he walked, and had difficulty standing.

As Timothy left the bedroom, the defendant struck him with the pole. Timothy turned and grabbed the pole from the defendant, who fell to the floor. Timothy threw the pole into a corner of the room and told the defendant that he would kill him if he did that again. Timothy went to his bedroom and shut off the lights.

The defendant continued to scream at Timothy from his bedroom. After approximately thirty minutes, the defendant, nude and armed with the pole, burst through the door of Timothy's room. The defendant told Timothy he was "a piece of crap." Timothy offered to leave in the morning and told his father that he needed to sleep. As Timothy reached over to close the door, the defendant thrust the pole into his face, knocking out three teeth. Timothy fell back, spat out his teeth, and pushed the defendant; Timothy punched the defendant a "few times" to prevent the defendant from hitting him again.

Timothy started to leave the apartment, but went back to get his keys, wallet and cigarettes. On his way out, he spat blood at the defendant. When the police arrived, the defendant, who had a bloody lip, told the officers that Timothy "beat the s--- out of me." The police took the defendant to the police station, where he waived his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966), and claimed that he had acted in self-defense after Timothy entered his room and attacked him.

At trial, the defendant testified that, on the night in question, he went to Wal-Mart to buy butane for the grill, and, after returning home, felt ill and went to bed. He woke later in the evening and went downstairs, where he found Timothy cooking dinner. The defendant was angry because he had repeatedly asked Timothy not to cook for the whole family. Following another angry confrontation with Timothy, the defendant suggested that they talk the next day and returned to his bedroom and undressed. According to the defendant, Timothy, enraged, barged into his room, at which time the defendant picked up the pole. Timothy said, "[Y]ou think that's going to help you?" and punched the defendant in the mouth. After Timothy lunged at the defendant again, the defendant struck Timothy in the face with the pole. The defendant also testified about a prior violent confrontation with Timothy.

Prior to trial, the defendant filed a notice of self-defense, indicating that he might argue that "the activity that [he] is alleged to have engaged in was justified in order to defend himself from what he reasonably believed to be the imminent use of unlawful, non-deadly force by" Timothy. *See* RSA 627:4 (2007). At the close of evidence, the defendant submitted several proposed jury instructions. One of the instructions, entitled *"SELF-DEFENSE — GENERALLY,"* read, in relevant part: "Evidence has been presented that the defendant acted in self-defense. When there is some evidence of self-defense, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense."

The court declined to accept the instructions because the defendant had failed to submit them prior to trial. The trial court instructed the jury on self-defense, but failed to instruct the jury that the State had the burden to prove, beyond a reasonable doubt, that the defendant did not act in self-defense.

*I. Jury Instructions*

We first consider the defendant's argument that the trial court errone-ously instructed the jury on self-defense. At the close of the defendant's case, the trial court held a bench conference with counsel for the State and the defendant about jury instructions. The trial court stated that it would

"not accept[] any proposed instructions at this point" because "[t]hey're supposed to be submitted before the case goes to trial."

The trial court then outlined its planned instructions. Specifically, the trial court indicated that its self-defense instruction was "[p]retty much" the "model jury instruction," and stated it would give the following instruction:

> Self-defense — a person has a right to use non-deadly force on another person to defend himself if, one, he actually believed that the other person was about to use unlawful, non-deadly force against him. In other words, Defendant could use non-deadly force if he actually believed that he was in imminent danger of being injured by the other person.
>
> Second, even if the Defendant actually believed that such danger existed, the belief must be reasonable. In other words, there must be a reasonable ground[] for the Defendant to believe that the other person was about to use unlawful . . . non-deadly force against him. Self-defense does not require an actual danger to the Defendant.
>
> Rather, the Defendant must reasonabl[y] believe that the other person is about to use unlawful, non-deadly force. . . .
>
> . . . .
>
> . . . third, the Defendant must reasonably believe that the amount of force he used was necessary for self-defense. A person is not permitted to use excessive force in self-defense — only a reasonable amount of force.
>
> The Defendant can use the amount of force which he believed was necessary under the circumstances as long as at the time there [were] reasonable grounds for the belief.

The trial court asked the parties "What do you have?" After a discussion about a proposed deadly force instruction, the court stated: "All right. I'm — I'm inclined to go with what I have." Counsel for the defendant said: "Okay. Thank you."

The trial court then instructed the jury. Although the court instructed the jurors that the State had the burden to prove beyond a reasonable doubt that the defendant is guilty, and instructed the jury on the elements of self-defense, the trial court failed to instruct the jury that the State had the burden to prove beyond a reasonable doubt that the defendant did not

act in self-defense. After instructing the jury, the court asked whether counsel had "any reason to approach the bench?" Counsel for the defendant replied: "No, thank you."

## A. Invited Error

The defendant argues that he had no obligation to submit jury instructions prior to trial, and that the trial court committed structural error in violation of his state and federal due process rights when it failed to instruct the jury that the State had the burden to prove beyond a reasonable doubt that he did not act in self-defense. The State argues that the trial court correctly concluded that the defendant failed to submit the jury instructions in a timely manner. The State also contends that the defendant failed to preserve the jury instruction issue. Specifically, the State argues that we should decide this case under the doctrine of invited error. *See State v. Goodale*, 144 N.H. 224, 227 (1999).

At oral argument the defendant for the first time claimed that he preserved his argument about the jury instructions by submitting a self-defense instruction to the trial court. We disagree. "To preserve a jury instruction issue for our review, counsel must do more than merely submit proposed instructions to the trial court . . . ." *State v. Nightingale*, 160 N.H. 569, 577 (2010). "[C]ounsel must actually make a specific objection to the court's jury instructions." *Id.* Alternatively, the defendant contends that defense counsel did not "clearly express approval of the court's erroneous instructions" and that the exchange between the trial court and counsel was "at best ambiguous." The defendant contends that "[a]ny ambiguity arising from the exchange . . . should not be resolved to invoke the invited error doctrine" because "it is not clear from the record that an intentional relinquishment of a known right has occurred." Alternatively, he argues that the trial court's error is reversible under a plain error analysis, and that invited error does not preclude plain error review. In response, the State argues that invited error precludes appellate review of the trial court's jury instructions, including plain error review.

The doctrine of invited error precludes appellate review of "error into which [a party] has led the trial court, intentionally or unintentionally." *Goodale*, 144 N.H. at 227 (quotation omitted). Invited error is sometimes "classified as waiver or estoppel." Comment, *A Foolish Consistency: How Refusing to Review Ford v. Garcia's Invited Error Demonstrates the Eleventh Circuit's Prioritization of Procedure over Justice*, 72 U. CIN. L. REV. 1707, 1720 (2004). The invited error doctrine is designed to deter "a party from inducing an erroneous ruling and later seeking to profit from the legal consequences by having the verdict vacated." *United States v. Barrow*, 118 F.3d 482, 490 (6th Cir. 1997); *see* Comment, *supra* at 1721. In

other words, the doctrine seeks to prevent a party from purposely creating error at trial and then later seeking reversal on appeal under the doctrine of plain error. Applying invited error also "ensure[s] that the trial court has the first opportunity to address the claim of error." *State v. Redding*, 172 P.3d 319, 325 (Utah Ct. App. 2007); Comment, *supra* at 1712. Like other, similar doctrines, the doctrine of invited error encourages the legitimacy and finality of trial court verdicts, predictability, and thorough trial preparation and professional accountability. *See* Comment, *supra* at 1712-13.

In deciding whether to adopt a rule that precludes plain error analysis in the case of invited error, we look to other jurisdictions' treatment of this issue. Some courts hold that, without exception, invited error precludes plain error analysis. *See, e.g., United States v. Mitchell*, 85 F.3d 800, 807 (1st Cir. 1996) (invited error waives all claims of error including plain error); *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir.) (same), *cert. denied*, 519 U.S. 999, *and cert. denied*, 519 U.S. 1020 (1996); *State v. Logan*, 30 P.3d 631, 632-33 (Ariz. 2001) ("If an error is invited, we do not consider whether the alleged error is fundamental . . . . Instead . . . we will not find reversible error when the party complaining of it invited the error."). This conclusion follows from the notion that invited error is "a species of waiver," distinguishable from "plain error, which is associated . . . with the idea of forfeiture." *United States v. Griffin*, 294 Fed. Appx. 393, 395 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1373 (2009). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment of a known right." *Id.* (quotation omitted); *see United States v. Eisom*, 585 F.3d 552, 556 (1st Cir. 2009). Accordingly, "a party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error," while "a party that has *waived* a right is not entitled to appellate relief." *Griffin*, 294 Fed. Appx. at 395 (quotation omitted).

At the same time, many courts have adopted an exception to the doctrine of invited error. *See, e.g., United States v. Hopkins*, 310 F.3d 145, 151 (4th Cir. 2002) (holding that defendant cannot complain of invited error where defendant requested jury instruction as matter of trial strategy and "error . . . did not taint the integrity of the judicial process" (quotation omitted)), *cert. denied*, 537 U.S. 1238 (2003); *United States v. Green*, 272 F.3d 748, 754 (5th Cir. 2001) (court will not reverse on the basis of invited error "absent manifest injustice" (quotation omitted)); *McNabb v. State*, 887 So. 2d 929, 983 (Ala. Crim. App. 2001) (invited error waived unless it rises to the level of plain error), *aff'd*, 887 So. 2d 998 (Ala. 2004), *cert. denied*, 543 U.S. 1005 (2004).

At the present time, the scope of the doctrine is unclear in a number of respects. First, the standard by which courts determine whether an error

is "invited" is opaque. *Compare United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (recognizing that invited error doctrine requires appellate court to determine "whether the defendant induced or caused the error" and "whether the defendant intentionally relinquished or abandoned a known right"), *with United States v. Gates*, 351 Fed. Appx. 362, 370 (11th Cir. 2009) ("[W]hen a party indicates to the district court that a jury instruction is acceptable, invited error occurs and that jury instruction may not be challenged on appeal."). Indeed, based upon the record before us, it is unclear whether the defendant here "invited" the trial court's error.

Second, the exception to the rule is imprecise. *See, e.g., Hopkins*, 310 F.3d at 151 (error "taint[s] the integrity of the judicial process" (quotation omitted)); *Green*, 272 F.3d at 754 ("manifest injustice"); *McNabb*, 887 So. 2d at 983 (plain error). Indeed, the exception appears to be similar, if not identical, to the third and fourth prongs of plain error review, which require us to consider whether the error at issue "affect[s] substantial rights" and "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *State v. Russell*, 159 N.H. 475, 489 (2009); *see Hopkins*, 310 F.3d at 151 (suggesting that invited error doctrine does not apply where error "taint[s] the integrity of the judicial process"); *Green*, 272 F.3d at 754 (implying that court may conduct plain error review in the presence of "manifest injustice"). Thus, while the invited error doctrine purports to preclude plain error review, the exception arguably allows for a version of plain error review. *See Doster v. State*, No. CR-06-0323, 2010 WL 2983206, at *20 (Ala. Crim. App. July 30, 2010) ("An invited error is waived, unless it rises to the level of plain error." (quotations omitted)); *State v. Vallejo*, No. A09-475, 2010 WL 696055, at *2 (Minn. Ct. App. March 2, 2010) (noting that the invited-error analysis does not apply to plain errors).

Third, the doctrine rests upon a questionable assumption about the nature of most errors in the trial court. As noted above, the primary purpose of the doctrine is to prevent unscrupulous lawyers from "inducing . . . erroneous ruling[s] and later seeking to profit from the legal consequences by having the verdict[s] vacated." *Barrow*, 118 F.3d at 490. We question the frequency of this type of error, *see Perez*, 116 F.3d at 849-50 (Kleinfeld, J., concurring) (noting that "[n]o ethical defense lawyer would do such a thing"), as well as the assumption that lawyers have a complete familiarity with the relevant law at all times, *see* Comment, *supra* at 1721.

In accomplishing its goal of discouraging manipulation of the trial process, the doctrine of invited error "assumes a complete familiarity with the relevant law and penalizes the ill-prepared or unwitting lawyer just as harshly as the malicious lawyer. In order to eliminate the machinations of a few, the invited error ban denies appellate review to all." *Id.* at 1721. The

doctrine "removes any discretionary remedy from the appellate court's panoply of options and subjugates the interests of justice to the demands of a procedural mechanism." *Id.* at 1722.

■ Given the uncertainty of the content and application of the invited error rule, and, particularly, the scope of the exception, we conclude that adoption of the rule would not serve the ends of justice. The rule would introduce considerable and unnecessary complexity into our appellate process with little attendant benefit. We therefore decline to adopt the rule that invited error precludes review for plain error.

### B. Plain Error

■ We next consider whether the trial court committed plain error by failing to instruct the jurors that the State had the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. Under the plain error rule, we may consider errors not raised before the trial court. *State v. Matey*, 153 N.H. 263, 266 (2006). "A plain error that affects substantial rights may be considered even though it was not brought to the attention of the trial court or the supreme court." SUP. CT. R. 16-A. However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *Russell*, 159 N.H. at 489. To find plain error: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *Id.* We have looked to federal plain error analysis in applying our plain error rule. *Id.* at 489-90.

■ Turning to the first prong of the plain error test, we conclude that the trial court erred when it failed to instruct the jury that the State had the burden to prove, beyond a reasonable doubt, that the defendant did not act in self-defense when he struck Timothy with the pole. Self-defense is a complete defense to the crime of assault. *See* RSA 627:1 (2007) (conduct justifiable as self-defense "constitutes a defense to any offense"). Once the trial court admits some evidence of self-defense, it must instruct the jury on self-defense because conduct negating the defense becomes an element of the charged offense that the State must prove beyond a reasonable doubt. *State v. McMinn*, 141 N.H. 636, 645 (1997); *see* RSA 625:10,:11, III(c) (2007).

Although the State argues that the trial court's charge to the jury adequately explained the State's burden of proof on self-defense, we disagree. The State relies upon the trial court's instructions about the presumption of innocence and the State's burden to prove the defendant's guilt beyond a reasonable doubt. However, the jury instructions did not

adequately explain that the State had the burden to prove that the defendant did not act in self-defense, and could have confused the jury. *See, e.g., Government of Virgin Islands v. Smith*, 949 F.2d 677, 681 (3d Cir. 1991) (noting that "a juror could reasonably have concluded that it was not necessary for the prosecution to prove the absence of self-defense beyond a reasonable doubt, and that the defendant bore the burden of proving the justification of self-defense instead").

◼ We next consider whether the error was plain. "Plain is synonymous with clear or, equivalently, obvious." *United States v. Olano*, 507 U.S. 725, 734 (1993) (quotations omitted). We conclude that it was. *See id.; cf. McMinn*, 141 N.H. at 645 ("when evidence of self-defense is admitted, conduct negating the defense becomes an element of the charged offense, which the State must prove beyond a reasonable doubt" (citation omitted)); *State v. Kousounadis*, 159 N.H. 413, 429 (2009) (reaffirming under State Constitution that a jury instruction omitting an element of the offense charged is structural error).

We next consider whether the error affected the defendant's substantial rights under the third prong of the analysis. *See Russell*, 159 N.H. at 489. Even assuming that the error did so, *see id.* at 491, we conclude that the error did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* at 489 (quotation omitted).

◼ Evidence that the defendant did not act in self-defense was over-whelming. *Cf. id.* at 492. Here, the State presented testimony from Timothy that his father was intoxicated and belligerent on the night in question. Timothy testified that his father had argued with him and with Lalicata. After he went to sleep, the defendant screamed at him, and then burst into his bedroom, called him a "piece of crap," and hit him in the face with the pole. The State also presented the testimony of Officer Killkelley, who testified that the police found blood on the floor of the hallway near Timothy's room, blood on the walls, the pole leaning up against the wall of Timothy's room, and two teeth on the floor. While the physical evidence corroborated Timothy's testimony, it was directly at odds with the defendant's version of events, as the defendant testified that he struck Timothy with the pole in the defendant's bedroom. Moreover, the trial court instructed the jury that the State had the burden to prove, beyond a reasonable doubt, that the defendant was guilty. For these reasons, we decline to exercise our discretion under the fourth prong of the plain error standard to reverse the conviction. *See Russell*, 159 N.H. at 491-92; *United States v. Jackson*, 569 F.2d 1003, 1010-11 (5th Cir.) (self-defense instruction that failed to properly assign burden of proof not reversible error under plain error review), *cert. denied*, 437 U.S. 907 (1978).

## II. New Hampshire Rule of Evidence 803(4)

The defendant argues that the trial court erroneously permitted Timothy Richard to testify about corrective options for his teeth, pursuant to New Hampshire Rule of Evidence 803(4). On direct examination, the State asked Timothy how he would "correct" his missing teeth. The defendant objected, arguing that the question asked for hearsay. The trial court overruled that objection, finding that the question called for statements made for the purposes of medical treatment or diagnosis pursuant to Rule 803(4). Timothy testified that:

> They told me a few options. One option would be . . . implants which would take — they would build up the bone in different sequences. And then they'd install studs. Those would sit in — because it takes six months after the implant to — you know — for that to harden. And they'd put the implants in.
>
> It'd be another three months just for the studs and then they'd . . . screw in like teeth . . . so that it wouldn't be something I need to take out or worry about breaking.

We will not reverse the trial court's admission of evidence absent an unsustainable exercise of discretion. *State v. Dodds*, 159 N.H. 239, 248 (2009). To meet this threshold, the defendant must show that the decision was clearly unreasonable to the prejudice of his case. *Id.* at 248-49.

The defendant argues that the trial court erroneously admitted this evidence because "[t]he plain language of the rule exempts statements made by a patient to a medical treatment provider, not the reverse." The defendant argues that the error prejudiced his case because "[t]he court's ruling enabled the State to prove an element of its case — serious bodily injury — through unreliable hearsay evidence." The State responds that even if the trial court erred, any error was harmless beyond a reasonable doubt.

An error is not harmless unless the State proves beyond a reasonable doubt that it did not affect the verdict. *State v. Kelley*, 159 N.H. 449, 451 (2009). In determining whether the State has met its burden, we consider the strength of the State's evidence presented at trial, as well as the character of the excluded evidence, including whether the evidence was inconsequential in relation to the State's evidence. *Id.* An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity or weight and if the inadmissible evidence is merely cumulative or inconsequential in relation to the State's evidence of guilt. *Id.*

■ Assuming there was error here, we agree with the State that any error was harmless. The State was required to prove that the defendant caused "serious bodily injury." *See* RSA 631:1, I(a), :2, I(a). The Criminal Code defines "[s]erious bodily injury" as "any harm to the body which causes severe, permanent or protracted loss of or impairment to the health or of the function of any part of the body." RSA 625:11, VI (2007). Evidence of the injury to Timothy's mouth was overwhelming, and that evidence of treatment options for Timothy's teeth was cumulative and inconsequential in relation to the State's evidence of serious bodily injury. The defendant admitted that he struck Timothy with the pole in the mouth. Timothy testified in detail about the assault, and the injuries that he sustained, including that he lost three teeth, that blood filled his mouth, and that he experienced cuts and redness. He testified about the negative impact of these injuries on his daily activities, and the State introduced photographs of his injuries. Timothy testified that his injuries made it more difficult for him to speak and eat, and that he had lost some work as a result of the injuries.

Similarly, Officers Sullivan, Dillon and Killkelley testified about their observations of Timothy and his injuries after the altercation with the defendant and their observations of the inside of the apartment; for example, Officer Killkelley testified that he found blood on the walls, two teeth, and the pole that the defendant used to strike Timothy. Finally, we note that, before Timothy offered the testimony at issue here, Timothy had already testified that he had spoken to a dentist, and that he needed "to see an oral surgeon to build up the bone because . . . after the teeth are removed, the bone shrinks." In light of the above, we conclude that the trial court's error, if any, was harmless.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, HICKS and CONBOY, JJ., concurred.