[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13211

_____

D. C. Docket No. 1:09-cr-21075-MGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES MATHURIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 15, 2012)

Before WILSON, PRYOR, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge:

Defendant-Appellant James Mathurin was convicted of a number of armed

robbery and weapons charges.  These convictions resulted from a five-month-long

crime spree in Miami-Dade County that took place when Mr. Mathurin was seventeen-years-old.  On appeal, Mr. Mathurin challenges his convictions on a number of grounds, one of which is that the government violated his rights under the Speedy Trial Act, 18 U.S.C. § 3161 et seq.

This case requires us to decide the narrow question of whether the time during which plea negotiations are conducted is automatically excludable from the Speedy Trial Act's thirty-day window for filing an information or indictment.  For the reasons that follow, we have concluded that the time during which plea negotiations are conducted is not automatically excludable.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the night of December 12, 2007, seventeen-year-old James Mathurin, along with Marckson Saint Fleur, were arrested by police on suspicion that they had carjacked an Acura at gunpoint earlier that evening.  That same night, Mr. Mathurin confessed his involvement in the Acura carjacking to police.[1]

In the days that followed, Mr. Mathurin began to tell the police about his involvement in a spree of other carjackings and armed robberies that had happened in Miami-Dade County over the previous months.  For most of these crimes, Mr.

---

[1] Mr. Mathurin argues that his post-arrest statements should be suppressed on a number of grounds.  We do not address those issues here.

2

Mathurin was charged with acting together with fellow gang members such as Mr. Saint Fleur and playing the role of gunman. The government tells us that after Mr. Mathurin made his incriminating statements, detectives "re-examined their case files, interviewed the witnesses, displayed photo line-ups and otherwise sought to corroborate Mathurin's accounts of those unsolved crimes." This cooperation continued over a period of several months. During this time, state charges were filed against Mr. Mathurin for several of the crimes in which he had implicated himself.

By May 2008, federal prosecutors were involved. On April 1, 2009, the U.S. Attorney for the Southern District of Florida filed a juvenile information charging Mr. Mathurin with forty-nine offenses occurring between July 26, 2007 and December 12, 2007. That same day, the government also moved the District Court to transfer Mr. Mathurin for criminal prosecution as an adult for the acts set forth in the juvenile information. Based on the juvenile information, Mr. Mathurin was taken into federal custody on April 9, 2009 and made his initial appearance before a magistrate judge that day.

By the summer of 2009, plea negotiations were underway and, as part of those negotiations, Mr. Mathurin agreed to waive his right under the Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. § 5031 et seq., not to be

3

prosecuted as an adult.  As a result, on August 27, 2009, the District Court entered an Order allowing the government to proceed against him as an adult.  Mr. Mathurin also waived his right to be housed separately from adult prisoners, and an Order was consequently entered permitting him to be housed with adult prisoners.

Mr. Mathurin claims that bilateral plea negotiations continued from that point until November 10, 2009.  The government, however, asserts that plea negotiations continued until the end of December 2009.[2]  The government does not dispute that on November 10, 2009 Mr. Mathurin said to go ahead and indict him.  But the government maintains that, at the conclusion of the November 10th meeting, Mr. Mathurin's defense counsel nonetheless asked that the indictment be delayed so that he could further discuss the government's offer with his client. After receiving evidence from both sides, the Magistrate Judge found that plea negotiations continued until December 22, 2009—the date of a status conference—when Mr. Mathurin clearly rejected the plea offer.  A week after the status conference, on December 29, 2009, the grand jury returned an indictment

---

[2] The government gives two December dates.  On page 46 of its brief, the government claims that plea negotiations continued until December 29, 2009.  However, on the next page, the government says "the district court properly concluded that the plea negotiations persisted until December 22, 2009."

4

against Mr. Mathurin that mirrored the juvenile information.  Once Mr. Mathurin

was re-arrested pursuant to this indictment, the juvenile information was

dismissed.  On April 20, 2010, the grand jury returned a superseding indictment.

The key difference between the original and superseding indictments was the

addition of Mr. Saint Fleur to the conspiracy charges and to one of the substantive

counts.

On April 28, 2010, Mr. Mathurin moved to dismiss all charges based on

violations of the Speedy Trial Act.  In response, the Magistrate Judge held a

hearing on May 19, 2010.  The Magistrate Judge ultimately recommended denying

Mr. Mathurin's motion for relief under the Speedy Trial Act, as well as Mr.

Mathurin's other motions to suppress inculpatory post-arrest statements, sever

counts, and suppress identification testimony.  Over Mr. Mathurin's objections,

the District Court adopted the Magistrate Judge's recommendations.

After a trial, a jury found Mr. Mathurin guilty of one count of conspiracy to

commit a robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), one count of

conspiracy to carry a firearm in furtherance of a crime of violence in violation of

18 U.S.C. § 924(o), two counts of attempted robbery in violation of the Hobbs

Act, 18 U.S.C. § 1951(a), twelve counts of possession of a firearm in furtherance

of a crime of violence in violation of 18 U.S.C. § 924(c)(1), twelve counts of

5

robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and two counts of carjacking in violation of 18 U.S.C. § 2119(1).  At the same time, Mr. Mathurin was acquitted of a number of other robbery and firearms offenses.  The District Court sentenced him to 492 months of imprisonment, followed by five years of supervised release.  Mr. Mathurin timely appealed, raising a number of issues. Here we address only his claim under the Speedy Trial Act.

## II. STANDARD OF REVIEW

"We review a claim under the Speedy Trial Act de novo and review a district court's factual determinations on excludable time for clear error."  United States v. Williams, 314 F.3d 552, 556 (11th Cir. 2002).

## III.  DISCUSSION

The Speedy Trial Act (the Act) requires the government to file an indictment or information against a defendant within thirty days from the date on which he was arrested or served with a summons.  See 18 U.S.C. § 3161(b).  At the same time, the Act excludes from the thirty-day period delays due to certain enumerated events.  See id. § 3161(h).  As particularly relevant here, the Act automatically excludes "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to" periods of delay resulting

6

from eight enumerated subcategories of proceedings.  Id. § 3161(h)(1).[3]  Among these eight subcategories of delay is "delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the government."  Id. § 3161(h)(1)(G).  If the thirty-day time limit is not met, the Act entitles the defendant to the dismissal of the charges contained in the initial complaint.  See id. § 3162(a)(1).  Mr. Mathurin argues that because the delay of the filing of the indictment until December 29, 2009 was not excused under any category enumerated in the statute, the government failed to indict him within the period required by the Act.  For this reason, he argues that the charges filed against him should have been dismissed.  The District Court disagreed, and it is that decision we now review.

## A.

On December 29, 2009, the government indicted Mr. Mathurin.  To determine whether the government timely indicted Mr. Mathurin in keeping within the Act, we must first establish when the statutory thirty-day period began.

---

[3] "The excludability of delay 'resulting from . . . proceedings' under subsection (h)(1) is 'automatic' in the sense that a district court must exclude such delay from a Speedy Trial Act calculation without any further analysis as to whether the benefit of the delay outweighs its cost." Bloate v. United States, __ U.S. __, __, 130 S. Ct. 1345, 1349 n.1 (2010).

On April 1, 2009, the government formally began to seek Mr. Mathurin's

transfer to adult status.  Mr. Mathurin did not oppose the government's request to

proceed against him as an adult, and on August 27, 2009, the Court permitted the

adult proceedings.  At the time the Court granted the request, it had reviewed the

charges in the juvenile information, which were the basis for the government's

planned prosecution of Mr. Mathurin as an adult.  Mr. Mathurin argues it was that

transfer from juvenile to adult status that triggered the Act's thirty-day clock.

When this issue was before the District Court, the government agreed that

the thirty-day period began to run from August 27, 2009, the date of Mr.

Mathurin's transfer.[4]  Now, it disputes this, and advances the theory that the Act's

---

[4] During the May 19, 2010 hearing on Mr. Mathurin's motion to dismiss the indictment, the following exchange took place between the District Court and the government:

| | |
|---|---|
| Court: | Okay.  Let's back up.  Okay.  When did the time period for indictment begin?  What date was that? |
| Government: | If we count, the very first possible counting date would have been August 27th. |
| . . . . | |
| Court: | On August 27th he is certified as an adult? |
| Government: | Correct. |
| Court: | The thirty days starts to run, right? |
| Government: | Correct. |
| Court: | It is running? |

thirty-day clock for the filing of an indictment or information did not apply to Mr. Mathurin during this period because the juvenile information was pending. We think the government's position from the May 19, 2010 hearing is the better view: Mr. Mathurin's transfer to adult status based on the charges contained in the juvenile information meets the statutory requirement for an arrest or summons in triggering the Act's thirty-day speedy-indictment clock. See United States v. Pete, 525 F.3d 844, 848 (9th Cir. 2008) (suggesting that the speedy-indictment clock began to run "when the district court granted the government's motion to proceed against [the defendant] as an adult"). Thus, we conclude that the thirty-day clock was triggered on August 27, 2009.

### B.

Although the time between August 27, 2009 and December 29, 2009 is more than thirty days, the government insists that it did not violate the Act. It claims that plea negotiations, which were ongoing throughout most of this period, toll the thirty-day speedy-indictment clock under the statute as "other proceedings concerning the defendant," 18 U.S.C. § 3161(h)(1). Based on this, the government argues there was no deadline violation.[5]

---

Government: Yes, sir.

[5] The government does not advance any other basis for excluding time between August 27, 2009 and December 29, 2009 from the calculation of the thirty-day period.

Whether delay resulting from plea negotiations is automatically excludable under the Act is an issue upon which our sister Circuits have not always agreed. Compare United States v. Alvarez-Perez, 629 F.3d 1053, 1058 (9th Cir. 2010) (noting that "in general, time devoted to plea negotiations is not automatically excluded"), and United States v. Lucky, 569 F.3d 101, 107 (2d Cir. 2009) (commenting that "plea negotiations do not fit comfortably into the 'other proceedings' language of section 3161(h)(1)"), with United States v. Leftenant, 341 F.3d 338, 344–45 (4th Cir. 2003) (holding that plea negotiations related to a separate set of charges counted as "'other proceedings' within the meaning of § 3161(h)(1)"), and United States v. Bowers, 834 F.2d 607, 610 (6th Cir. 1997) (explaining in dicta that "the plea bargaining process can qualify as one of many 'other proceedings'").[6]  However, unlike the Circuits addressing this question in these cases, we now have the benefit of the Supreme Court's recent decision in Bloate v. United States, __ U.S. __, 130 S. Ct. 1345 (2010).  Bloate is instructive here because it sets limits to the seemingly expansive category of "delay resulting from other proceedings concerning the defendant."

---

[6] In dicta, the Seventh and Eighth Circuits have embraced the idea that plea negotiations qualify as "other proceedings concerning the defendant."  See United States v. Van Someren, 118 F.3d 1214, 1218 (8th Cir. 1997); United States v. Montoya, 827 F.2d 143, 150 (7th Cir. 1987). Yet, the Eighth Circuit has more recently expressed doubt about "a per se rule that all time periods in which there [are] any open plea negotiations [is] excludable."  United States v. Elmardoudi, 501 F.3d 935, 942 (8th Cir. 2007).

10

According to the Supreme Court, when the category of delay at issue is "governed by" one of § 3161(h)(1)'s eight subparagraphs, id. at 1352, a court must look only to that subparagraph to see if the delay is automatically excludable, see id. at 1352–53.  In other words, the "including but not limited to" clause of § 3161(h)(1) does not modify the contents of the enumerated subcategories themselves.  See id. at 1354.  Were that clause to apply to each of the subcategories, the Court noted, it would "render even the clearest of the subparagraphs indeterminate and virtually superfluous."  Id.  Bloate thus teaches that if the governing subparagraph does not indicate that the delay is excludable, then a court may not read the delay as falling within § 3161(h)(1)'s scope.  In this way, the Court recognized "the illustrative nature of subsection (h)(1)'s list of categories of excludable delay," id., even as it "constru[ed] each of the eight subparagraphs in (h)(1) to govern, conclusively unless the subparagraph itself indicates otherwise, . . . the automatic excludability of the delay resulting from the category of proceedings it addresses," id. at 1355.

Under this framework, the question for us is whether one of the subparagraphs of § 3161(h)(1) addresses delay resulting from proceedings related to plea negotiations between the government and a defendant.  We note that § 3161(h)(1)(G) (subparagraph (G)) automatically excludes only that "delay

11

resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government."  18 U.S.C. § 3161(h)(1)(G).  "Read, as it must be, in the context of subsection (h)," Bloate, 130 S. Ct. at 1352, this text governs the automatic excludability of delays resulting from a specific category of "proceedings concerning the defendant," namely, proceedings involving plea agreements.

Because subparagraph (G) addresses the automatic excludability of delays associated with plea agreements, the question of whether the delay in Mr. Mathurin's case is automatically excludable is determined entirely by the requirements of that subparagraph.  And insofar as the District Court was never asked to review a proposed plea agreement during the relevant period, the government does not argue that the time during which plea negotiations were conducted here meets the requirements of subparagraph (G).  We agree, and conclude that the governing limits of subparagraph (G) foreclose the government's claim that the delay arising from plea negotiations in this case is automatically excludable as "delay resulting from other proceedings concerning the defendant."

Of course, we do not say that delay resulting from plea negotiations can never toll the speedy-indictment clock.  Rather, we say only that such delay does not automatically toll the thirty-day period.  It is clear Congress specifically

12

contemplated the possibility that one or both parties, for reasons not listed in the Act, might need more than thirty days before an information or indictment could be filed. For those cases, it established a specific procedure by which a court would have to approve the delay based on on-the-record "findings that the ends of justice served by taking such [a delay] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). This ends-of-justice continuance, the Supreme Court has noted, "is the most open-ended type of exclusion recognized under the Act." Zedner v. United States, 547 U.S. 489, 508, 126 S. Ct. 1976, 1990 (2006). And at least one Circuit has explicitly recognized the ends-of-justice exclusion to permit additional time to continue plea negotiations. See United States v. Fields, 39 F.3d 439, 445 (3d Cir. 1994).

Significantly, this method of tolling the speedy-indictment clock for plea negotiations is more consistent with the structure and purpose of the statute because it avoids creating the kind of loophole that would exist under the government's view. The government reads the statute to mean that once the government and a defendant agree to negotiate a plea agreement, they may delay the process for as long as they wish, without having to get formal court approval. But the Supreme Court has made clear the purpose of the Act is "not only to protect defendants, but also to vindicate the public interest in the swift

13

administration of justice." Bloate, 130 S. Ct. at 1356.  Based on this, even where

the government and the defendant are willing to waive the protections of the Act,

they typically may not do so without formal findings from a court that the public

interest would be served.  See Zedner, 547 U.S. at 500–01, 126 S. Ct. at 1985.

Also, it is revealing that when Congress illustrated the types of "delay

resulting from other proceedings" that would be automatically excludable under

§ 3161(h)(1), it listed events that usually occur only under the authority or at the

direction of a court, such as delay resulting from an interlocutory appeal, 18

U.S.C. § 3161(h)(1)(C), or delay attributable to a period during which a

proceeding is under advisement by the court, id. § 3161(h)(1)(H).  In contrast, plea

negotiations "are informal discussions between the parties and are directly

controlled by the parties, not the court." Lucky, 569 F.3d at 107.  For these

reasons, we conclude that reading the category of automatically excludable delays

to include the time during which plea negotiations are conducted is contrary to the

structure and purpose of the Act.

### C.

Even if Mr. Mathurin's rights under the Act were violated, the government

argues that waiver and estoppel principles preclude Mr. Mathurin's Speedy Trial

Act claim.  For its waiver argument, the government advances the novel theory

that "the failure to raise a pre-indictment delay objection prior to the return of the indictment constitutes a waiver of that claim."  But this theory draws no support from the text of the Act, whose only provision addressing "a waiver of the right to dismissal under this section" conditions the waiver on the "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere."  18 U.S.C. § 3162(a)(2).  As this provision says nothing about the consequences of a defendant failing to move for dismissal prior to the filing of the indictment, we decline to read into the statute something not there.  Instead, we read the statute to mean what it says, insofar as a defendant waives his right to dismissal only when the defendant fails "to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere."  Id.

As for estoppel, the government points out that "defense counsel encouraged and affirmatively sought the pre-indictment delay of which he now complains," in order to argue that "Mathurin should now be barred from assailing the propriety of what he had earnestly requested."  In light of the Supreme Court's reasoning in Zedner v. United States, however, this argument also fails.

As we have said, Zedner made clear that because the Act is designed to advance not only a defendant's interest in a speedy trial, but also the public's interest in the same, see 547 U.S. at 500–01, 126 S. Ct. at 1985, it does not permit

15

a defendant to waive his rights under the Act prospectively, see id. at 502, 126 S. Ct. at 1986 ("Allowing prospective waivers would seriously undermine the Act because there are many cases . . . in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interest."). Zedner further made clear that courts should refrain from recognizing an estoppel where doing so would in effect "entirely swallow the Act's no-waiver policy." Id. at 505, 126 S. Ct. at 1988. So even where a defendant asks the government to delay the trial beyond the time permitted by the Act, it is highly doubtful that a finding of estoppel is proper.

Importantly, this is not a case in which the defendant asked the government to exceed the time limits of the Act. Before the indictment was filed, Mr. Mathurin's counsel simply asked the government for more time to consider a plea offer. That does not equal asking the government to exceed the time limits permitted by the Act, and so it is not "clearly inconsistent" with the position Mr. Mathurin now takes in seeking dismissal of the indictment. See id. at 505–06, 126 S. Ct. at 1988 (holding that earlier representation that a continuance was needed to gather evidence was not "clearly inconsistent" with later argument that continuance was not permissible under the Speedy Trial Act). That, in turn, is important because, as the Supreme Court noted in Zedner, a typical requirement

16

for finding estoppel is that "a party's later position" be "clearly inconsistent with its earlier position." Id. at 504, 126 S. Ct. at 1987 (quotation marks omitted). Since the position that Mr. Mathurin now takes is not "clearly inconsistent" with his earlier position, he is not estopped from challenging the excludability under the Act of delay resulting from plea negotiations.

### D.

We conclude that the time during which plea negotiations were conducted was not automatically excludable from Mr. Mathurin's speedy-indictment clock. That being the case, the government exceeded the maximum thirty-day delay for bringing the indictment. Under the Act, this means that the charges in the superseding indictment, as originally set forth in the juvenile information and later cited in the government's motion to transfer, must be dismissed.[7] See 18 U.S.C. § 3162(a)(1). Mr. Mathurin's convictions must be vacated. However, "we leave it to the District Court to determine in the first instance whether dismissal should be with or without prejudice." Zedner, 547 U.S. at 509, 126 S. Ct. at 1990.[8]

---

[7] Title 18 U.S.C. § 3162(a)(1) refers to the dismissal of charges contained in the complaint that was filed against the defendant. We reject the government's argument that a Speedy Trial Act violation would result in dismissal of the indictment, but not the superseding indictment to the extent it contains the same charges.

[8] Our holding on the Speedy Trial Act question renders all other issues that Mr. Mathurin raises on appeal moot.

17

## IV. CONCLUSION

We **REVERSE** the District Court's denial of Mr. Mathurin's motion to dismiss, **VACATE** his convictions, and **REMAND** to the District Court with instructions to determine whether dismissal of the charges should be with or without prejudice.