[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10261
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-00039-AT-JSA-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JESUS BOCANEGRA,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 4, 2015)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Jesus Bocanegra appeals his conviction for possession of 1,000 kilograms or more of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1),(b)(1)(A)(vii). He contends that his indictment violated the Speedy Trial Act, 18 U.S.C. § 3161, because he was arrested by state officials and held in state custody for three months before he was indicted by the federal government. After a review of the record and the parties' briefs we affirm Mr. Bocanegra's conviction.

**I**

In November of 2012, Customs and Border Patrol officers discovered marijuana hidden within the compartments of furniture shipped from Mexico to Mr. Bocanegra's commercial furniture business. The officers notified the U.S. Attorney's Office, which stated it might be interested in prosecuting the case. On November 15, 2012, an undercover federal officer delivered the furniture containing marijuana to the commercial space leased by Mr. Bocanegra. Mr. Bocanegra received and unloaded part of the furniture and then asked the undercover driver to deliver the remaining pieces to a warehouse leased by Mr. Bocanegra. A surveillance team of federal agents waited outside the warehouse until Mr. Bocanegra arrived the next day. He and several other men spent hours in the warehouse and then drove away in Mr. Bocanegra's truck.

That same day, November 16, 2012, local officers and Georgia state agents, at the direction of federal agents, arrested Mr. Bocanegra and took him into state

custody. Federal agents conducted a search of the warehouse, where they found several pieces of furniture with false backs to conceal hollow compartments. The federal agents uncovered approximately 1,200 kilograms of marijuana after taking apart the furniture. The federal agents subsequently explained that they involved state and local authorities in the event that the federal government did not prosecute Mr. Bocanegra. Both state and federal authorities interrogated Mr. Bocanegra.

The federal agents contacted the U.S. Attorney's Office again about prosecuting the case, but an Assistant U.S. Attorney informed the agents that the Office would not be prosecuting the case, as the amount of marijuana found fell below their internal threshold for prosecution. Gwinnett County officers then took Mr. Bocanegra to the Gwinnett County Detention Center, and the state charged Mr. Bocanegra. The federal agents, however, continued to lobby the U.S. Attorney's Office to take the case.

On January 4, 2013, the U.S. Attorney's Office informed state prosecutors that they might take the case. On February 5, 2013, a federal grand jury indicted Mr. Bocanegra, and that same day the state dismissed all pending charges against him.

Before trial, Mr. Bocanegra filed a motion to dismiss the indictment under the Speedy Trial Act, 18 U.S.C. § 3161, as more than 30 days had elapsed between

3

his initial arrest and the indictment. After an evidentiary hearing, the district court denied Mr. Bocanegra's motion, finding that the government did not use the "state criminal charges as a 'ruse' nor as a cloak for its delay in prosecution of federal charges." Mr. Bocanegra, the district court found, was not held by state authorities "solely to answer federal charges or as an administrative device to excuse delays in the U.S. Attorney's Office's charging process." The district court, therefore, concluded that there was no violation of the Speedy Trial Act and Mr. Bocanegra proceeded to trial. A jury found Mr. Bocanegra guilty of possession of marijuana with intent to distribute, in violation of 18 U.S.C. § 841.

On appeal, Mr. Bocanegra argues that the district court erred in denying his motion to dismiss the indictment because the government violated the Speedy Trial Act. He argues that the government did not indict him until 81 days after he was arrested. Although he acknowledges he was in state custody following his initial arrest, Mr. Bocanegra asserts that his state custody was "constructive federal custody." The district court, Mr. Bocanegra contends, erred in finding no violation of the Speedy Trial Act.

**II**

We review a district court's denial of a defendant's motion to dismiss under the Speedy Trial Act *de novo* and the district court's factual findings on excludable time for clear error. *United States v. Harris*, 376 F.3d 1282, 1286 (11th Cir. 2004).

4

The Speedy Trial Act, 18 U.S.C. § 3161(b), "requires the government to file an indictment or information against a defendant within thirty days from the date on which he was arrested or served with a summons." *United States v. Mathurin*, 690 F.3d 1236, 1239 (11th Cir. 2012). "If the thirty-day time limit is not met, the Act entitles the defendant to dismissal of the charges contained in the initial complaint." *Id.* The issue here is not the date of the indictment, but rather the date of Mr. Bocanegra's arrest. Mr. Bocanegra contends he was arrested for purposes of the Speedy Trial Act on November 16, 2012, while the government contends that the Act was never triggered because Mr. Bocanegra was not arrested on federal charges until after he was indicted.

Mr. Bocanegra was arrested at the direction of federal agents on November 16, 2012, and subsequently placed into state custody, as the U.S. Attorney's Office initially declined to prosecute him. In order for an arrest to trigger the Act, however, that arrest must be on federal charges. *See United States v. Kubiak*, 704 F.2d 1545, 1548 (11th Cir. 1983) (citing *United States v. Shahryar*, 719 F.2d 1522, 1524–25 (11th Cir. 1983) ("For the time limit of the Act to commence a person must be held for the purpose of answering to a federal charge.")). *See also United States v. Skanes*, 17 F.3d 1352, 1353 (11th Cir. 1994) (noting that although the defendant was arrested on the same charges by state authorities and held in state custody, "it was not until [the defendant] was taken into federal custody . . . that

the time constraints of the Speedy Trial Act were triggered"); *United States v. Bell*, 833 F.2d 272, 277 (11th Cir. 1987) (finding that although federal authorities were highly involved in the defendant's initial arrest, "it was only after the federal indictment . . . that the clock under the Speedy Trial Act began running").

Mr. Bocanegra argues that because the agents that led the investigation and arrested him were federal officials, his arrest was in effect a federal arrest. This circuit's precedent, however, is contrary to Mr. Bocanegra's argument given the factual findings of the district court. "[I]f one is held by state officers on a state charge and subsequently turned over to federal authorities for federal prosecution, the starting date for purposes of the Act is the date that the defendant is delivered into federal custody." *Shahryar*, 719 F.2d at 1525 (holding that the date of the federal indictment, not the date of the state arrest, was the triggering date for the Speedy Trial Act).

That a defendant's arrest is effected by federal officers does not mean the arrest was federal in nature if the defendant was "never taken before a federal magistrate" nor had "federal charges ever lodged against [him] in a complaint." *Kubiak*, 704 F.2d at 1548. The application of the Act does not, as Mr. Bocanegra contends, "depend[ ] only upon which type of agency—federal or otherwise—first places his hands upon and detains a defendant."

6

In *Kubiak*, much like in Mr. Bocanegra's case, "federal law enforcement authorities declined prosecution in favor of the state law enforcement agency." *Id.* at 1548, n.3. We found that the defendants there "were not held to answer in federal court until they were indicted," despite being initially arrested by federal officers, who also contacted federal, state, and local law enforcement agencies to see who would prosecute the defendants. *Id.* State authorities initially agreed to prosecute, but then became concerned that they lacked jurisdiction over the defendants, and approximately four months later, the defendants were federally indicted. The defendants argued the indictment violated the Speedy Trial Act, because more than 30 days had passed between their initial arrest and the indictment. *Id.* at 1548. We held, however, that the defendants' initial arrest by the coast guard did not trigger the Speedy Trial Act, because the defendants "were not held to answer in federal court until they were indicted." *Id.* at 1548, n.3.

Mr. Bocanegra nevertheless argues that the arrest was a federal arrest, because even though he was in state custody, it was constructive federal custody. In *United States v. Russo*, 796 F.2d 1443, 1450–51 (11th Cir. 1986), the defendant, Mr. Pine, made a similar argument, asserting that the federal government's involvement in the investigation leading to his arrest triggered the 30-day clock in the Speedy Trial Act, even though he was taken into state custody pending state criminal charges. Mr. Pine argued that "he was being held by state authorities to

7

answer federal charges." *Id.* at 1451. We found that because Mr. Pine "was at no time in custody to answer federal charges or under federal arrest until . . . state charges were dismissed . . . , there was no violation of the Speedy Trial Act." *Id.* We come to the same conclusion here. Mr. Bocanegra was not in constructive federal custody simply because the team investigating his criminal conduct and directing the initial arrest were federal officers.

Mr. Bocanegra finally argues that we should, nevertheless, construe his initial arrest as a federal arrest on federal charges because the state detention was a "mere ruse" to detain him for future federal charges. We have explained, in the context of INS detentions incident to deportation, that though such "detentions are civil in nature and do not trigger the Speedy Trial Act, . . . a contrary result may be warranted when deportations are used by the government as 'mere ruses to detain a defendant for later criminal prosecution.'" *United States v. Drummond*, 240 F.3d 1333, 1336 (11th Cir. 2001) (citing *United States v. Noel*, 231 F.3d 833, 836 (11th Cir. 2000)). In these cases, the burden is on the defendant "to establish that the primary or exclusive purpose of the civil detention was to hold him for future [federal] prosecution." *Id.* at 1336 (internal quotation marks and citation omitted).

We have not recognized a "mere ruse" exception in the context of a state's detention of an individual on pending state criminal charges. Such an extension might implicate sovereignty concerns, as "an arrest or indictment by one sovereign

8

would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign." *United States v. MacDonald*, 456 U.S. 1, 10 n.11 (1982). *See also Shahryar*, 719 F.2d at 1525 ("Common sense, as well as deeply rooted concepts of federalism, dictate that the Speedy Act rules relate only to federal and not to state custody. To hold otherwise would require our rejection of the doctrine of dual sovereignty . . . .").

In any event, even if the "mere ruse" exception applied to state detentions, Mr. Bocanegra cannot establish here that his detention at Gwinnett County was a "mere ruse" to hold him for future federal criminal charges. The district court found that there was no ruse, and the record supports that finding. State charges were brought against Mr. Bocanegra, and federal agents did not contact state prosecutors. The record suggests the state officers and prosecutors were moving forward to bring a case against Mr. Bocanegra, until those charges were dismissed in February of 2013, when the federal government brought federal charges.

### III

The district court did not err in denying Mr. Bocanegra's motion to dismiss the indictment under the Speedy Trial Act. We therefore affirm.

**AFFIRMED.**