PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DONALD STANTON SHEALEY, a/k/a
Face, a/k/a Diddy, a/k/a Face
Diddy, a/k/a The City,

*Defendant-Appellant.*

No. 09-4653

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(5:08-cr-00282-F-2)

Argued: January 28, 2011

Decided: April 25, 2011

Before NIEMEYER, KING, and GREGORY,
Circuit Judges.

Affirmed by published opinion. Judge Gregory wrote the
opinion, in which Judge Niemeyer and Judge King joined.

## COUNSEL

**ARGUED:** Jeffrey Michael Brandt, ROBINSON &
BRANDT, PSC, Covington, Kentucky, for Appellant.

Michael Gordon James, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Jennifer P. May-Parker, Michael G. James, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

GREGORY, Circuit Judge:

Appellant challenges his drug convictions for violations of the Speedy Trial Act and of the Fifth and Sixth Amendments as well as sentencing errors. We affirm because we find that the district court properly granted a continuance, rightly denied Appellant's motion to sever, and properly calculated his sentence.

I.

On September 24, 2008, a grand jury indicted Donald Shealey, Appellant, and seven other co-defendants on six counts of distributing and conspiring to distribute cocaine, cocaine base, and heroin. The co-defendants included Salahudeen Abdallah, Khalid Abdallah, Timothy Hargrove, Tyrone Lawrence, Gilbert Sherwood, Jamal Watson, and one individual whose name was redacted. The charges stem from the operation of a local drug organization known as the Face Mob Family ("FMF"). Appellant was arrested on September 30, 2008.

Arraignment was initially set for December 8, 2008. On October 28 and 30, 2008, co-defendants Hargrove and Lawrence moved to continue arraignment and trial. On October 31, 2008, the district court granted that motion and continued the arraignment and trial dates to January 20, 2009. The dis-

trict court excluded this time from its Speedy Trial Act computation.

On December 2, 2008, co-defendant Khalid Abdallah's original attorney withdrew, and was replaced on December 12. On December 21, 2008, Appellant rejected a plea agreement the Government had offered him. In phone conversations that week, the Government informed Appellant that it would be filing a superseding indictment, adding a money laundering count.

On January 5, 2009, Khalid Abdallah moved for a continuance for the first time. On January 6, 2009, Appellant requested that motion be denied unless Khalid Abdallah's case was severed from Appellant's. Appellant further asked to protect his speedy trial rights and to commence his trial as planned, on January 20 or soonafter. On January 8, the district court denied Khalid Abdallah's first motion to continue.

Then on January 15, 2009, three things occurred: First, Khalid Abdallah filed a second motion to continue, explaining that he had replaced his lawyer due to a prior conflict of interest, and his replacement counsel had only received new discovery materials on December 20, 2008. Those new materials consisted of eleven computer disks, including several tens of thousands of pages of FBI, DEA, and local police reports and transcribed telephone intercepts. Khalid Abdallah's new lawyer stressed that it took time to organize these materials in order to identify and correct errors in how Khalid Abdallah was identified or misattributed in the transcripts. Khalid Abdallah also pointed out that he had not been provided all of the discovery materials in the case, including interviews with multiple law enforcement officials, warrants, and search logs. Co-defendant Jamal Watson supported the motion.

Second, Appellant responded to Abdallah's second motion, renewing his demand for a speedy trial which was supposed to start the week of January 20, 2009. Appellant contended

that "[i]f the Government has failed to provide timely discovery, intentionally, negligently, or otherwise, that fact should not . . . 'force' a continuance . . . [or] allow the Government to circumvent the present arrangement and trial schedule [to] allow them more time to perfect their case." J.A. 49. Appellant suggested that the Government's superseding indictment was manipulative, since it was based on information the Government had already possessed for four months. Finally, Appellant argued that the "Government can hardly argue that all defendants should remain joined for 'judicial economy' if they are responsible for the last-minute issues that appear to be forcing a continuance." J.A. 50.

Third, still on January 15, 2009, the grand jury returned a superseding indictment which added three new counts. The first new count alleged Appellant and Samara Laben Scott conspired with each other in money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(ii), and 1956(h). The second new count alleged Appellant and co-defendant Scott aided and abetted each other to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (2). The third new count alleged co-defendant Watson was a felon in possession of a firearm. The superseding indictment also added two co-defendants to the original charge of conspiracy to possess heroin, cocaine, and crack with intent to distribute.

The next day, on January 16, 2009, the Government joined Khalid Abdallah's and Jamal Watson's motions for a continuance. The Government reiterated that Khalid Abdallah had recently obtained replacement counsel who was still getting up to speed. The Government also pointed to the superseding indictment, new defendants, and additional finance-related charges to support its position. To deny a continuance, the Government argued, "would provide these two new defendants only [ ] seven days to prepare for, and proceed to trial. . . ." J.A. 59. The Government emphasized the complex and voluminous nature of the federal wiretap. The Government

also contended that it had produced all discovery materials to Appellant before October 20, 2008, and given him the opportunity to inspect or copy tangible evidence — but he never responded. The Government also opposed severance and argued that the conspiracy charges should be tried together.

Finally, that same day, January 16, 2009, the district court granted Abdallah's second motion to continue, namely because the superseding indictment "add[ed] substantive charges against the existing defendants, as well as adding two new co-defendants." J.A. 64. The district court continued the trial until March 2, 2009, for all co-defendants because "the ends of justice served by this continuance outweigh the interests of the [Appellant] and the public in speedy trial." J.A. 65. Consequently, the district court concluded that any delay be excluded from its Speedy Trial Act calculation pursuant to 18 U.S.C. § 3161(h).

On January 18, 2009, Appellant moved to sever on the grounds that he was "prepared to address all allegations contained in both the original and superseding indictments" and was "specifically not asking for any further time to prepare for trial." J.A. 67. Appellant reiterated that he had consistently asserted his rights and that the Government was engaging in dilatory tactics to conduct additional interviews and strengthen its case. Appellant asserted that "the evidence of prejudice to [Appellant] will be born out at trial as it becomes clear for this Court, and the appellate courts, if necessary, that the Government will only have acquired, perfected, and put into 'trial form' much of its evidence after . . . January 20th. . . ." J.A. 68.

On February 12, 2009, the district court denied Appellant's motion to sever. It reasoned that Appellant had "failed to show any 'actual prejudice' or 'specific trial right' that would be compromised by the continuance. . . ." J.A. 71-72 (citing *United States v. Najjar*, 300 F.3d 466, 473 (4th Cir.), *cert. denied*, 123 S. Ct. 705 (2002)).

Subsequently, at trial, several co-defendants testified against Appellant about his sales of drugs and purchases of cars for his FMF associates. Law enforcement officials testified about the results of wiretaps and search of Appellant's home. The jury convicted Appellant on all eight counts. The district court sentenced him to life on count one; 360 months on each of counts two through six; and 240 months for each of counts seven and eight — all to be served concurrently.

Appellant timely appealed to this Court, alleging violations of the Speedy Trial Act and of the Fifth and Sixth Amendments as well as sentencing errors. We address those three issues in turn.

## II.

We review de novo a district court's legal interpretation of the Speedy Trial Act. *United States v. Bush*, 404 F.3d 263, 272 (4th Cir. 2005). We review a district court's denial of a motion for severance for an abuse of discretion. *United States v. Khan*, 461 F.3d 477, 490 (4th Cir. 2006), and will reverse if joinder deprives defendants "of a fair trial and results in a miscarriage of justice." *United States v. Harris*, 498 F.3d 278, 291 (4th Cir. 2007) (citation omitted).

Appellant argues that the district court erred in denying his motion to dismiss for Speedy Trial Act violations as a result of denying his motion for severance. Appellant maintains, as he did at trial, that this prejudiced him because the Government "acquired, perfected and put into 'trial form' much of its evidence after the Court's [original] January 20th [trial date]." J.A. 68. Namely, Appellant points out that at least nine Government witnesses did not sign or enter into plea agreements until after January 20, 2009.

The Speedy Trial Act generally requires a defendant be tried within 70 days of either the filing of an indictment or appearing before a judge, whichever is later. 18 U.S.C.

§ 3161(c)(1) (2001). "All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant." *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986); *United States v. Jarrell*, 147 F.3d 315, 316 (4th Cir. 1998) ("[T]ime excludable for one defendant is excludable for all defendants."). If one co-defendant files a motion to continue and the district court grants it, then that time is excluded as to all co-defendants regardless of whether a motion to sever has been filed. *United States v. Sarno*, 24 F.3d 618, 622 (4th Cir. 1994).

The Speedy Trial Act excludes certain delays "if the judge granted [a] continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Courts are required to provide their reasoning about the "ends of justice," 18 U.S.C. § 3161(h)(7)(A), and consider various factors, including: (i) whether the failure to grant a continuance would result in a miscarriage of justice; (ii) whether the case is so unusual or complex that counsel cannot adequately prepare for trial within established time limits; (iii) whether there was delay in filing the indictment because of the nature of the arrest or grand jury proceedings; or (iv) whether denial of continuance would otherwise infringe upon the time to obtain or maintain counsel or prepare for trial. 18 U.S.C. § 3161(h)(7)(B).

With respect to severance, "there is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Brugman*, 655 F.2d 540, 542 (4th Cir. 1981) ("[B]arring special circumstances, individuals indicted together should be tried together."). Severance is warranted when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. A defendant must "establish that actual prejudice would result from a joint trial . . .

and not merely that a separate trial would offer a better chance of acquittal." *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995).\*

The district court did not abuse its discretion in denying Appellant's motion to sever. We start with a strong presumption in favor of joint trials. *See Zafiro*, 506 U.S. at 537 (1993); *Brugman*, 655 F.2d at 542. Here, Appellant's theory of injury is indirect at best, since it assumes that the delay strengthened the Government's case and, in turn, weakened his own case. But that fails to articulate any injury to "a specific trial right," *Zafiro*, 506 U.S. at 539, or some other "actual prejudice [that] would [have] result[ed] from a joint trial," *Reavis*, 48 F.3d at 767. Indeed, it is insufficient to vaguely assert "that a separate trial would offer a better chance of acquittal." *Reavis*, 48 F.3d at 767. Rather, "a defendant is not entitled to severance merely because separate trials would more likely result in acquittal, or because the evidence against one defendant is not as strong as that against the other." *United States v. Strick-*

---

\*While Appellant primarily challenges the district court's denial of his motion for severance, the overall delay here stems initially from Khalid Abdallah's second motion for continuance. It is worth briefly examining the district court's decision to grant that continuance in the first place. Khalid Abdallah had recently obtained a new lawyer and substantial new discovery material—and the Government had just filed a superseding indictment with additional substantive charges and new co-defendants. That fits within at least two of the "ends of justice" factors, namely the case's complexity and time to prepare for trial. 18 U.S.C. § 3161(h)(7)(B)(i) and (iv). While the district court did not reference these factors by numeral, it sufficiently explained its reasoning on the record and referenced the "ends of justice" language in § 3161(h). J.A. 64-65. This comports with the "broad discretion [placed] in the District Court to grant a continuance when necessary to allow further preparation." *United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985). The district court here had a reasonable basis for granting the continuance and did not abuse its discretion, per, *United States v. Williams*, 445 F.3d 724, 739 (4th Cir. 2006). Moreover, nothing in the record or procedural history suggests that the reasons Khalid Abdallah gave for seeking a continuance were pretextual.

*land*, 245 F.3d 368, 384 (4th Cir. 2001) (citations and internal quotation marks omitted).

This is unaffected by the fact that some co-defendants may have entered into plea agreements after the superseding indictment and original trial date. The text and precise timing of the plea agreements do not appear in the Joint Appendix. But even if we assume several of the agreements were signed after the original January 20 trial date, that does not necessarily impinge upon a specific trial right or show actual prejudice. Nothing in the record suggests that the co-defendants' motions for continuances were expressly or implicitly aimed at extending plea negotiations. That materially distinguishes this case from the Ninth Circuit's outcome in *United States v. Hall*, where a co-defendant moved for a continuance with an explicit aim "to complete [plea] negotiations." 181 F.3d 1057, 1062-1063 (9th Cir. 1999). *Hall* excluded the delay which resulted from that co-defendant's motion because "an underlying aim was to eliminate the need for a joint trial by achieving a plea agreement between [co-defendant] and the government." *Id.* Finally, once the district court here granted the continuance, the Government could well have taken longer to finalize plea agreements because it had more time — not because it had planned to manipulate the trial schedule all along.

## III.

"This court reviews legal issues, including claims of due process violations, de novo." *De Belbruno v. Ashcroft*, 362 F.3d 272, 278 (4th Cir. 2004). "We review de novo the legal conclusions of the district court," *United States v. Foster*, 2011 U.S. App. LEXIS 3939 (4th Cir., Mar. 2, 2011), including Sixth Amendment claims.

Appellant contends that by delaying the filing of a superseding indictment, the Government violated Appellant's Fifth Amendment right to due process as well as his Sixth Amend-

ment right to a speedy trial. Specifically, Appellant alleges he was prejudiced by the last-minute superseding indictment because it gave the Government time to negotiate plea deals with Appellant's co-defendants.

"[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971). "This is a heavy burden because it requires not only that a defendant show actual prejudice, as opposed to mere specula-tive prejudice, but also that he show that any actual prejudice was substantial — that he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." *Jones v. Angelone*, 94 F.3d 900, 907 (4th Cir. 1996) (citations omitted).

Here, Appellant's Fifth Amendment claim turns on the existence of "substantial prejudice." Again, Appellant's the-ory of prejudice is largely circuitous and speculative, since it hypothesizes that the Government delayed the superseding indictment to provide more time to secure plea agreements. That, according to Appellant, lessened the relative strength of his own case. But even assuming that constituted prejudice, it was not necessarily "substantial" since it at best strengthened the Government's case on the margins, but did not "meaning-fully impair[ ]" Appellant's own case.

To establish a Sixth Amendment violation, a defendant must show that the *Barker v. Wingo* factors weigh in his favor. 407 U.S. 514 (1972). Those factors are: (1) whether the delay was uncommonly long; (2) what the reason was for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant. 407 U.S. at 530. A one year delay is generally treated as presump-

tively prejudicial. *United States v. Thomas*, 55 F.3d 144, 149 (4th Cir. 1995) (citing *Doggett v. United States*, 505 U.S. 647 (1992)).

With respect to the Sixth Amendment, Appellant concedes that the delay was not uncommonly long (*Barker* factor 1). But he contends that the reason for the delay was to secure tactical advantage (factor 2), that he raised this issue early (factor 3), and that this delay prejudiced him (factor 4). In the alternative, Appellant argues the Government acted in bad faith. Here, the *Barker* factors do not weigh in Appellant's favor. This issue comes down to why the delay occurred and whether it prejudiced Appellant. Once more, Appellant fails to point to any specific prejudice beyond a generalized assertion that the superseding indictment gave the Government more time to prepare for trial. Nothing in the record or procedural history suggests that the Government expressly delayed the superseding indictment solely to obtain more plea deals or otherwise strengthen its case. Nor does the superseding indictment here add so little as to suggest it was a transparent pretext for delay. Rather, the superseding indictment here appears to add, in good faith, new defendants and charges related to the FMF's overall drug activities. We conclude that there was no constitutional violation in how the Government handled the superseding indictment.

## IV.

We review a sentence for substantive reasonableness for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 52 (2007). Appellant challenges the reasonableness of his life sentence and argues essentially that twenty years would have been sufficient but not greater than necessary to punish, deter, or rehabilitate him.

Here, the district court considered that Appellant had distributed voluminous quantities of drugs, was a career offender, and was the leader and organizer of criminal activity

which involved five or more participants and used violence to advance its goals. The district court duly considered the advisory guidelines range as well as the 18 U.S.C. § 3553(a) sentencing factors. It concluded that Appellant's adjusted offense level was 48 — five levels higher than the maximum permitted by the Guidelines. The district court then determined Appellant's total offense level was 43.

We find Appellant's sentence to be procedurally and substantively reasonable, per *United States v. Hughes*, 402 F.3d 540, 546-47 (4th Cir. 2005). Appellant himself does not point to any specific flaws in his sentencing. Moreover, the district court found that the FMF, under Appellant's leadership, used violence to advance its goals. We can discern no abuse of discretion.

## V.

For these reasons, the decision of the district court is

*AFFIRMED*.