**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-5043**

_____

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

        v.

JENERETTE CHARLES DIXON,

              Defendant - Appellant.

_____

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Benson Everett Legg, Senior District
Judge.  (1:10-cr-00552-BEL-1)

_____

Argued:  September 20, 2013          Decided:  October 18, 2013

_____

Before NIEMEYER and AGEE, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:**  Gerald Chester Ruter, THE LAW OFFICES OF GERALD C.
RUTER, Baltimore, Maryland, for Appellant.  James G. Warwick,
OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for
Appellee.  **ON BRIEF:**  Rod J. Rosenstein, United States Attorney,
Benjamin Walter, Legal Assistant, OFFICE OF THE UNITED STATES
ATTORNEY, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jenerette Charles Dixon was convicted by a jury of conspiracy to commit bank robbery, 18 U.S.C. §§ 371 and 2113; bank robbery, id. § 2113; and brandishing a firearm during and in relation to a crime of violence, and aiding and abetting the same, id. §§ 2 and 924(c). He was sentenced to a total of 240 months' imprisonment for these offenses. On appeal, Dixon claims that his speedy trial rights under the Speedy Trial Act (STA), id. § 3161 et seq., and the Sixth Amendment were violated. We affirm.

I

On March 11, 2010, Dixon, with the help of two accomplices, Kelly Woods and Nebuzarada Nisseau-Bey, robbed the Harbor Bank at 1000 Lancaster Street in Baltimore, Maryland at gunpoint. On July 16, 2010, United States Magistrate Judge Grimm issued a warrant for Dixon's arrest. Five days later, on July 21, 2010, Dixon was arrested on the warrant and made his initial appearance before United States Magistrate Judge Bredar.[1] That

---

[1] Both Magistrate Judge Grimm and Magistrate Judge Bredar resolved certain pretrial matters in this case. At present, both serve as a United States District Judge for the District of Maryland.

same day, counsel was appointed to Dixon, and the government moved for an order of detention pursuant to 18 U.S.C. § 3142.

On July 23, 2010, a detention hearing was held, and Dixon was ordered detained. On July 28, 2010, Dixon's counsel sent a letter to Magistrate Judge Grimm requesting that the preliminary hearing set for August 4, 2010 be continued for sixty days, through September 22, 2010, in order to allow the parties to discuss a resolution of the case pre-indictment. This letter was filed on August 2, 2010, and the motion was granted by Magistrate Judge Bredar the same day.

On August 23, 2010, Dixon sent a letter, properly construed as a motion to substitute counsel, to Magistrate Judge Grimm asking that his current counsel be removed and new counsel be appointed. On September 9, 2010, Magistrate Judge Grimm held a hearing on Dixon's motion to substitute counsel. At the conclusion of the hearing, Magistrate Judge Grimm granted Dixon's motion and appointed new counsel. On the same day, the grand jury returned an indictment charging Dixon with bank robbery, id. § 2113, and brandishing a firearm during and in relation to a crime of violence, and aiding and abetting the same, id. §§ 2 and 924(c).

On September 22, 2010, the grand jury returned a superseding indictment charging Dixon, Woods, and Nisseau-Bey with conspiracy to commit bank robbery, id. §§ 371 and 2113

- 3 -

(Count One); bank robbery, id. § 2113 (Count Two); and brandishing a firearm during and in relation to a crime of violence, and aiding and abetting the same, id. §§ 2 and 924(c) (Count Three). On November 5, 2010, Woods and Nisseau-Bey were arrested and brought before United States Magistrate Judge Gauvey for their initial appearances.

On November 24, 2010, Nisseau-Bey filed a motion to suppress. While this motion was pending, Dixon filed a variety of motions, including several motions to suppress. On February 7, 2011, Dixon sent a letter to the district court complaining that his new counsel had not filed a motion to dismiss based on STA violations. The government was ordered to respond to Dixon's STA assertions, which it did on March 1, 2011.

With regard to the STA's requirement that an indictment be returned within thirty days of arrest, the government contended that, because Dixon's counsel sought a continuance to resolve the case pre-indictment, the STA's indictment clock was tolled from August 2, 2010 to September 9, 2010, the date the indictment was returned. With regard to the STA's requirement that the defendant's trial take place seventy days from the later of the filing of the information or indictment or the defendant's initial appearance before a judicial officer, the government argued that there were excludable periods of delay under 18 U.S.C. § 3161 that rendered Dixon's trial timely.

- 4 -

After reviewing the government's response, the district court, without setting forth any reasoning, concluded that "[n]o violation of the Speedy Trial Act [had] occurred." (S.J.A. 23).

On April 21, 2011, the district court held a hearing on Dixon's pretrial motions, including an April 19, 2011 pro se motion to dismiss based on STA violations and Dixon's Sixth Amendment right to a speedy trial. These motions were denied the following day. With regard to Dixon's speedy trial claims, the district court concluded, again without expressing any reasoning, that "there [was] no speedy trial violation in this case." (S.S.J.A. 36).

On April 28, 2011, Dixon filed a motion to have DNA tested. This motion was denied on April 29, 2011. On May 2, 2011, Dixon's jury trial commenced. Dixon was convicted of all three counts and sentenced to a total of 240 months' imprisonment.

After filing a timely notice of appeal, Dixon's counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), finding no meritorious grounds for appeal but raising five challenges to Dixon's convictions. In response, we directed the parties to submit supplemental briefing on the issue of whether Dixon's speedy trial rights were violated and set the case down for oral argument. Having heard oral argument on September 20, 2013, the case is now ready for decision.

Dixon argues that his speedy trial rights, both under the STA and the Sixth Amendment, were violated below. We turn first to Dixon's two STA arguments and then to his Sixth Amendment argument.

We review the district court's interpretation of the STA de novo and any related factual findings for clear error. United States v. Rodriguez–Amaya, 521 F.3d 437, 440 (4th Cir. 2008). The STA requires that a defendant be indicted within thirty days of his arrest and tried within seventy days from the later of the filing of the information or indictment or the defendant's initial appearance before a judicial officer. 18 U.S.C. § 3161(b), (c)(1); United States v. Leftenant, 341 F.3d 338, 343 (4th Cir. 2003). An indictment in violation of the thirty-day time limit must be dismissed. 18 U.S.C. § 3162(a)(1). Failure to begin the trial within the seventy-day time limit shall, upon motion of the defendant, result in dismissal of the charging instrument either with or without prejudice. Id. § 3162(a)(2).

The requirement of dismissal, however, is not absolute. Section 3161(h) provides for certain periods of excludable delay that extend the thirty-day time limit of § 3161(b) and the seventy-day time limit of § 3161(c)(1). Several periods of excludable delay are relevant here.

The first is set forth in 18 U.S.C. § 3161(h)(1). That section requires the exclusion of "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to" eight enumerated subcategories of proceedings. Id. § 3161(h)(1). "Although § 3161(h)(1) exclusions often fall within the eight specifically listed subcategories, various non-enumerated delays have also been held to be automatically excluded by virtue of the non-limiting 'other proceedings' clause." United States v. Valdivia, 680 F.3d 33, 38 (1st Cir. 2012). In our circuit, delays related to plea negotiations constitute non-enumerated "other proceedings" under § 3161(h)(1). Leftenant, 341 F.3d at 344–45 (holding that plea negotiations trigger automatic exclusion under 18 U.S.C. § 3161(h)(1)).[2]

---

[2] Some courts have held that the delay resulting from plea negotiations is not automatically excludable under the STA. See United States v. Mathurin, 690 F.3d 1236, 1240-41 (11th Cir. 2012) (holding that the time devoted to plea negotiations is not automatically excludable under the STA); United States v. Alvarez–Perez, 629 F.3d 1053, 1058 (9th Cir. 2010) (noting that, "in general, time devoted to plea negotiations is not automatically excluded"); and United States v. Lucky, 569 F.3d 101, 107 (2d Cir. 2009) (noting that "plea negotiations do not fit comfortably into the 'other proceedings' language of section 3161(h)(1)"). These courts do recognize that the delay resulting from plea negotiations can toll the STA indictment clock where an appropriate ends-of-justice finding is made. See, e.g., Mathurin, 690 F.3d at 1241.

The second period of excludable delay relevant here is set forth in 18 U.S.C. § 3161(h)(7)(A). That section excludes the delay resulting from a continuance granted by a court sua sponte or at the request of a party, but only upon findings "that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The court is not required to make the ends-of-justice finding contemporaneous with the granting of the continuance; rather, the findings must be made no later than the time the district court rules on the defendant's motion to dismiss under the STA. Zedner v. United States, 547 U.S. 489, 507 (2006).[3]

The third period of excludable delay relevant here is set forth in 18 U.S.C. § 3161(h)(1)(D). That section excludes the "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Id. § 3161(h)(1)(D). Such time is excluded even if a delay in holding a hearing is not "reasonably necessary." Henderson v. United States, 476 U.S. 321, 330 (1986).

---

[3] As noted by the Supreme Court in Zedner, "[t]he best practice, of course, is for a district court to put its [ends-of-justice] findings on the record at or near the time when it grants the continuance." 547 U.S. at 507 n.7.

Dixon's first STA argument concerns the timeliness of his indictment, which was returned on September 9, 2010. He posits that his indictment was untimely under the STA's thirty-day time limit.

Dixon was arrested on July 21, 2010. Thus, in the absence of excludable periods, the government had to return an indictment by August 20, 2010, thirty days from July 21, 2010. The period between July 21, 2010, when the government moved for pretrial detention, and July 23, 2010, when the motion was granted, is excludable. United States v. Wright, 990 F.2d 147, 149 (4th Cir. 1993). Thus, the STA indictment clock did not start running until July 24, 2010. The STA indictment clock ran nine days and then stopped on August 2, 2010, when Dixon's motion for continuance was filed. 18 U.S.C. § 3161(h)(7)(A).

The parties disagree on whether the STA indictment clock restarted on August 3, 2010. Dixon asserts that the STA indictment clock restarted because there was nothing akin to an ends-of-justice finding made, either before or after the granting of the continuance. See Zedner, 547 U.S. at 506-07 (noting that "without on-the-record findings" concerning the ends-of-justice, time period covering continuance cannot be excluded under the STA); see also United States v. Kellam, 568 F.3d 125, 137 (4th Cir. 2009) (noting that, "[i]n order for a delay resulting from a continuance to be excludable, the court

is to explain, 'either orally or in writing, its reasons for finding' that the ends of justice served by granting the continuance outweigh the interests of the public and the defendant") (quoting 18 U.S.C. § 3161(h)(7)(A)).

In response, the government first argues that the STA indictment clock did not restart on August 3, 2010 because the parties were actively involved in plea negotiations at that time. The government posits that any delay attributable to plea negotiations is excludable as "other proceedings" under 18 U.S.C. § 3161(h)(1). In pressing this argument, the government neither points to any record evidence of actual plea negotiations (e.g., when they began or when the finished), nor points to any findings by Magistrate Judge Bredar or the district court concerning such negotiations.

Perhaps sensing the dearth of evidence on the plea negotiations question, the government presses a second argument. The government argues that Dixon should not be entitled to benefit from Magistrate Judge Bredar's or the district court's failure to make appropriate findings. Cf. United States v. Hopkins, 310 F.3d 145, 150 (4th Cir. 2002) (rejecting the defendant's STA claim because "none of the delay in getting to trial was attributable to the government"); United States v. Keith, 42 F.3d 234, 240 (4th Cir. 1994) (holding that, if a defendant affirmatively consents to a motion for a continuance

- 10 -

and the reasons for the granting of that motion as garnered from the record are sufficient to support a finding that the ends-of-justice would be met by granting the motion, the defendant cannot take advantage of that discrete period of time covered by the continuance in asserting a violation of the STA).

We need not decide if the STA indictment clock restarted on August 3, 2010. This is so because, even assuming, without deciding, the STA indictment clock restarted on August 3, 2010, it stopped twenty days later on August 23, 2010, the date on which Dixon sent his motion to substitute counsel. Cf. Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that a prisoner's notice of appeal is deemed filed on the date he delivers it to prison authorities for mailing to the court). Thus, the time period between August 23, 2010 and September 9, 2010 (the date the motion to substitute was granted) is excludable. At most, then, only twenty-nine non-excludable days elapsed between Dixon's arrest and indictment, because Dixon's motion to substitute counsel was resolved the same day as the day the indictment was returned, September 9, 2010. Of particular note, candidly, at oral argument, counsel for Dixon essentially conceded that the STA indictment clock stopped running on August 23, 2010, and, therefore, the return of the indictment was timely. Accordingly, there was no STA violation based on pre-indictment delay.

Dixon's second STA argument concerns the timeliness of his trial. He posits that his trial was untimely under the STA's seventy-day time limit.

Although the original indictment was returned on September 9, 2010, the grand jury returned a superseding indictment against Dixon and his co-defendants on September 22, 2010. The filing of the superseding indictment in this case restarted the STA trial clock. See United States v. King, 483 F.3d 969, 973 (9th Cir. 2007) (holding that the filing of a superseding indictment adding a new defendant restarts the STA clock for all defendants); United States v. Barnes, 251 F.3d 251, 257 (1st Cir. 2001) (holding that a superseding indictment returned the day before the speedy trial deadline, containing the same charges and adding only one new, albeit previously known, defendant served to restart the STA clock); United States v. Gambino, 59 F.3d 353 (2d Cir. 1995) (holding that the STA clock in cases involving multiple defendants begins with the running of the clock for the most recently added defendant). Such restarting was further delayed because Dixon's co-defendants were not arrested until November 5, 2010. See United States v. Shealey, 641 F.3d 627, 632 (4th Cir. 2011) ("'All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant.'") (quoting Henderson, 476 U.S. at 323 n.2); see also United States v. Jarrell, 147

F.3d 315, 316 (4th Cir. 1998) ("[T]ime excludable for one defendant is excludable for all defendants."); United States v. Sarno, 24 F.3d 618, 622 (4th Cir. 1994) (noting that, if one co-defendant files a motion to continue and the district court grants it, then that time is excluded as to all co-defendants regardless of whether a motion to sever has been filed). Thus, the STA trial clock began to run on November 6, 2010.

The STA trial clock ran for seventeen days. The STA trial clock stopped on November 24, 2010, when Nisseau-Bey filed a motion to suppress. Jarrell, 147 F.3d at 316; 18 U.S.C. § 3161(h)(1)(D). While the STA trial clock was stopped, Dixon filed several motions. The STA trial clock began to run on April 23, 2011, because the district court ruled on Dixon's pretrial motions on April 22, 2011. 18 U.S.C. § 3161(h)(1)(D). The STA trial clock ran for another five days, but then stopped because, on April 28, 2011, Dixon filed a motion to have DNA evidence tested. Id. The STA trial clock recommenced the day after the motion was denied on April 29, 2011. Four days later, on May 2, 2011, Dixon's trial began.

Given all these exclusions, less than thirty days counted toward the seventy-day time limit. Thus, there was no post-indictment STA violation because Dixon's trial was timely.

Dixon also presses a speedy trial claim under the Sixth Amendment. We review the district court's legal conclusions on

- 13 -

this issue de novo and its factual findings for clear error. United States v. Woolfolk, 399 F.3d 590, 597-98 (4th Cir. 2005).

The Sixth Amendment provides, in relevant part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. To establish a violation of this constitutional guarantee, a defendant first must show that the Sixth Amendment's protections have been activated by an "arrest, indictment, or other official accusation." Id. at 597 (citation and internal quotation marks omitted).

When the Sixth Amendment's protections have been activated by a qualifying event, we engage in the four-factor balancing test set forth in Barker v. Wingo, 407 U.S. 514 (1972), and consider whether: (1) the delay before trial was uncommonly long; (2) the government or the defendant is more to blame for that delay; (3) in due course, the defendant asserted his right to a speedy trial; and (4) the defendant suffered prejudice from the delay. Shealey, 641 F.3d at 634. The duration of the delay, in addition to being a factor in this test, also is a threshold requirement because the defendant must establish that the length of the delay is at least presumptively prejudicial. Doggett v. United States, 505 U.S. 647, 651–52 (1992).

In this case, Dixon clearly asserted his speedy trial rights. However, the total time that elapsed from the initial

appearance to the trial was a little over nine months, an amount of time in which Dixon concedes is not excessively long.  Cf. id. at 652 n.1 (noting that "postaccusation delay [is] 'presumptively prejudicial' at least as it approaches one year").  Moreover, most of the delay in bringing Dixon to trial was not attributable to the government.  Dixon sought to explore a pre-indictment resolution of the case through a successful motion for continuance, successfully filed a motion to substitute counsel, and filed a variety of pre-trial motions.  These actions substantially delayed the start of the trial.  More importantly, Dixon has not specified how his case was in any way prejudiced by the delay.  As in Hopkins, he "has not shown, or even argued, that any evidence was damaged or lost, that any witnesses could not be found, or that his case was harmed in any manner by the delay."  310 F.3d at 150.  After weighing the Barker factors, we conclude there was no Sixth Amendment violation.

III

For the reasons stated herein, the judgment of the district court is affirmed.[4]

AFFIRMED

---

[4] We have considered the other issues raised by Dixon's counsel pursuant to <u>Anders</u> and find them to be without merit. In accordance with <u>Anders</u>, we have reviewed the entire record in this case and have found no meritorious issues for appeal other than the speedy trial issues addressed herein.