**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-4538**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

  v.

GREGORY MAXWELL PALMER,

    Defendant - Appellant.

---

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, Senior District Judge.  (3:21−cr−00234−FDW−SCR−1)

---

Argued:  September 12, 2025      Decided:  November 18, 2025

---

Before DIAZ, Chief Judge, and WILKINSON and WYNN, Circuit Judges.

---

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion, in which Judges Wilkinson and Wynn joined.

---

**ARGUED:**  Jared Paul Martin, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlotte, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

DIAZ, Chief Judge:

Gregory Palmer applied for naturalization in 2011. But in 2013, he pleaded guilty in state court to a serious crime—that he committed in 2008. He didn't disclose the misconduct on his naturalization application. A federal jury found Palmer guilty of knowingly concealing his criminal history to procure United States citizenship. 18 U.S.C. § 1425(a).

Palmer challenges his federal conviction on three grounds. He first argues that the district court should have dismissed the indictment for unconstitutional preindictment delay. And even if not, he continues, it erred by admitting his state guilty plea and by excluding expert testimony related to—but not drawing conclusions about—his intent.

We agree that the district court shouldn't have limited the expert's testimony. But we find no other error. Because the sole error was harmless, we affirm.

I.

A.

Palmer sought naturalization in 2011. Question 15 on the application asked, "Have you ever committed a crime or offense for which you were **not** arrested?" J.A. 36. Palmer checked no.

Later that year, Palmer sat for an interview, which had two parts. First, an immigration officer administered—and Palmer passed—reading, writing, and civics tests. Next, the officer asked Palmer each application question out loud. That included question

2

15. Palmer again answered no. The officer approved Palmer's application, and Palmer became a citizen.

## B.

In 2013, Palmer pleaded guilty in North Carolina to attempted statutory rape. He admitted to "engag[ing] in a sexual act with . . . a person of the age of 13 years" in 2008. J.A. 729. In exchange, the State dismissed four counts of statutory rape and four counts of indecent liberties with a child.

Palmer told the state court that he understood the proceedings, he could read and write at an eleventh-grade level, and he was pleading guilty because he was guilty. The court accepted Palmer's plea and sentenced him to 157 to 198 months in prison.

## C.

## 1.

A federal grand jury charged Palmer with naturalization fraud in 2021. The government alleged that Palmer knowingly provided false information representing he hadn't committed a crime or offense for which he wasn't arrested (in question 15) to procure citizenship.

Palmer moved to dismiss the indictment for unconstitutional preindictment delay. The district court denied his motion without a hearing, finding that Palmer hadn't met his burden to show the delay prejudiced his defense.

Next, Palmer moved to suppress evidence of his state guilty plea and conviction. The district court denied that motion after an evidentiary hearing.

3

The court found that Palmer couldn't challenge the validity of his state conviction in federal court. And even if he could, it continued, his counsel wasn't ineffective for failing to explain the immigration consequences that could stem from his guilty plea.

So Palmer proceeded to trial.

2.

Palmer retained a speech-language pathology expert, Dr. Kathleen Fahey. She had two main opinions. First, Fahey opined that Palmer had a low IQ and a language-literacy developmental disorder. And second, she determined that Palmer couldn't have understood the question he answered falsely. She based this conclusion on her findings that Palmer had a fourth-grade reading level and question 15 had an eighth-grade "readability" level. J.A. 841.

Before trial, the court heard argument about the scope of Fahey's testimony. It excluded her second main opinion and the grade-level conclusions underlying it under Rule 704(b).

Three witnesses testified at trial. First, the immigration officer described how Palmer had passed language-based citizenship tests and answered each application question without showing any sign of confusion. Palmer's ex-wife testified that she helped him complete his naturalization application. She also shared letters Palmer wrote to her and recalled that he read westerns for pleasure. And Fahey detailed Palmer's language-processing deficits.

The jury convicted Palmer. In so doing, it found that he knowingly answered question 15 falsely. The district court sentenced Palmer to six months in prison to be served

4

concurrently with his state sentence. 8 U.S.C. § 1451(e) required the court to revoke Palmer's citizenship and void his naturalization certificate.

This appeal followed.

## II.

We start with Palmer's motion to dismiss for unconstitutional preindictment delay. We review the district court's factual findings for clear error and its conclusions of law de novo. *United States v. Villa*, 70 F.4th 704, 715 (4th Cir. 2023).

The grand jury indicted Palmer just within the ten-year statute of limitations for naturalization fraud.[1] Palmer argues that the delay between the alleged fraud and the indictment prejudiced him because his mother, whom he asserts would have testified in his defense, passed away in the intervening years. The district court rejected Palmer's prejudice theory as speculative because he lacked evidence to corroborate his assertions about the substance of his mother's testimony.

### A.

We primarily rely on statutes of limitations to bar the government from bringing "overly stale criminal charges." *United States v. Lovasco*, 431 U.S. 783, 789 (1977). Although it's possible for an indictment within the statute of limitations to raise due process concerns, a defendant raising such a challenge faces a high burden.

---

[1] We needn't decide when the statute of limitations began running with precision. Palmer concedes that the indictment was within bounds, and the government admits that it neared the ten-year mark.

Our inquiry concerns whether the delay "violates fundamental conceptions of justice or the community's sense of fair play and decency." *United States v. Uribe-Rios*, 558 F.3d 347, 358 (4th Cir. 2009) (cleaned up). A defendant must first show he suffered "substantial actual prejudice" because of the delay. *Villa*, 70 F.4th at 716. If he can meet that "heavy burden," *United States v. Shealey*, 641 F.3d 627, 633 (4th Cir. 2011), we consider whether that prejudice outweighs the government's reason for the delay. *Uribe-Rios*, 558 F.3d at 358.

We find substantial actual prejudice where a defendant "was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." *Shealey*, 641 F.3d at 634. When the "claimed prejudice is the unavailability of [a] witness[]," the defendant must "identify the witness he would have called; demonstrate, with specificity the expected content of that witness' testimony; establish to the court's satisfaction that he has made serious attempts to locate the witness; and . . . show that the information the witness would have provided was not available from other sources." *Jones v. Angelone*, 94 F.3d 900, 908 (4th Cir. 1996).

A defendant must satisfy all four factors. And after that, it remains his burden to show the prejudice was substantial. *Id.* at 907–08.

## B.

Palmer can't meet his high burden. He offers only his own assertions about the substance of his mother's testimony. When a defendant's proffer is limited to his own contentions about what a witness "would have testified," the substance of the "testimony remains highly speculative." *United States v. Automated Med. Lab'ys. Inc.*, 770 F.2d 399,

6

404 (4th Cir. 1985). Although Palmer claims that he's presented credible evidence to corroborate his assertions, we find none in the record. He's thus failed to demonstrate the expected content of his mother's testimony with specificity.

But even crediting Palmer's account, other sources offered the same information. Palmer's trial turned on whether he understood question 15 on the naturalization application: The jury heard no shortage of evidence about Palmer's cognitive challenges. Dr. Fahey testified to Palmer's "language literacy and speech abilities" and that he performed "in the poor to very poor range" on the language tests she administered to him. J.A. 632. And Palmer's ex-wife testified that she helped him fill out his naturalization application.

Palmer is right that neither a family witness nor a witness with personal knowledge of his childhood testified. But he has three siblings—and teachers, employers, friends, and coworkers—who could have testified about Palmer's family background, childhood, and long-term language-processing challenges.

That forms our view that any prejudice Palmer suffered wasn't substantial. At most, Palmer's mother would have provided cumulative evidence on the point.

Palmer did present evidence about those challenges. But the jury also saw Palmer's plea agreement, where he wrote that he read at an eleventh-grade level. And it heard that Palmer successfully completed challenging reading, writing, and civics tests. The jury even heard that Palmer used to write letters and read western novels for fun.

Presented with a breadth of information about Palmer's cognitive abilities, the jury found that he knowingly misrepresented his past criminal activity. We can't conclude on

7

this record that Palmer's mother's testimony likely would have tipped the scales in his favor. *See Shealey*, 641 F.3d at 633.

Because Palmer can't show substantial actual prejudice, we needn't consider the government's reasons for the delay. *See Uribe-Rios*, 558 F.3d at 358. While the government's largely unexplained lingering wasn't good practice, Palmer can't make out a due process claim.[2]

III.

Palmer next argues the district court should have suppressed his state guilty plea because his counsel failed to advise him that pleading guilty could lead to immigration consequences.

We review the denial of a motion to suppress de novo. *United States v. Linville*, 60 F.4th 890, 896 (4th Cir. 2023). The district court characterized Palmer's motion to suppress as a collateral challenge to the validity of his plea agreement and declined to entertain it. We share that view, because to exclude Palmer's plea agreement as unconstitutionally obtained would require us to declare it invalid the day it was signed.

We presume that state convictions and guilty pleas are valid. *United States v. Locke*, 932 F.3d 196, 199 (4th Cir. 2019); *Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 403–04 (2001). There's only one exception to that strong presumption: when a person is

---

[2] Nor did the district court abuse its discretion by declining to hold an evidentiary hearing. We only require a hearing "if the motion raises a material factual dispute." *United States v. Bowman*, 106 F.4th 293, 300 (4th Cir. 2024). There's no such dispute here.

8

deprived of his right to counsel. *Id.* at 405; *see also Burgett v. Texas*, 389 U.S. 109, 115 (1967). The Supreme Court has declined to extend that exception to ineffective assistance of counsel claims. *Custis v. United States*, 511 U.S. 485, 496 (1994).

Palmer nevertheless asks us to create a new exception for *Padilla* errors—ineffective assistance of counsel claims based on counsel's failure to advise a defendant of possible immigration consequences. *See Padilla v. Kentucky*, 559 U.S. 356 (2010). We find no principled basis to distinguish *Padilla* errors from other ineffective assistance of counsel claims. *See United States v. Vongphakdy*, No. 22-4593, 2023 WL 6638122, at *2 (4th Cir. Oct. 12, 2023). While these errors are serious, they aren't "jurisdictional defect[s]" like "the failure to appoint counsel at all." *Custis*, 511 U.S. at 496.

The district court couldn't suppress Palmer's plea agreement without passing on the validity of the plea. It was right not to.

## IV.

Last, we consider whether the district court abused its discretion by limiting Dr. Fahey's testimony. *See United States v. Robertson*, 68 F.4th 855, 861 (4th Cir. 2023). Even if we find error, we must also find that the error "could have affected the verdict" for Palmer to prevail. *United States v. Hedgepeth*, 418 F.3d 411, 419 (4th Cir. 2005).

Federal Rule of Evidence 704(b) prohibits opinion testimony about "whether the defendant did or did not have a mental state." 18 U.S.C. § 1425 requires the government to prove that a person knowingly procured U.S. citizenship in a manner contrary to law.

9

The district court excluded three of Fahey's opinions based on Rule 704(b). Palmer abandons the third—that Palmer didn't understand question 15. But he argues that the two opinions underlying that conclusion—that Palmer read at a fourth-grade level, and the question required an eighth-grade reading level—left room for the jury to reach its own conclusion on his state of mind.

We consider the Supreme Court's recent guidance from *Diaz v. United States*, 602 U.S. 526 (2024) in parsing Fahey's testimony. That decision postdates Palmer's trial. While the excluded testimony here doesn't neatly map onto *Diaz*'s holding, this case offers a first opportunity to consider *Diaz*'s broader lessons about Rule 704(b).

### A.

Experts can opine on "ultimate issues." Fed. R. Evid. 704(a). But an expert in a criminal case can't testify about whether the defendant had a mental state or condition when it's an element of the charged crime or a defense. Fed. R. Evid. 704(b).

Rule 704(b) only "targets conclusions about whether a certain fact is true: the defendant did or did not have a mental state or condition." *Diaz*, 602 U.S. at 537 (cleaned up). Applying that rule in *Diaz*, the Supreme Court held that an opinion that "most drug couriers know that they are transporting drugs" wasn't an opinion about the defendant's mental state. *Id*. at 528. Testimony that *most* members of a group had a mental state didn't compel the jury to find that the *defendant* had that mental state, even though she was a member of the group.

*Diaz* teaches us to construe Rule 704(b) narrowly. If the expert's opinion leaves room for the jury to draw its own conclusion about the defendant's mental state, Rule

10

704(b) doesn't block it. The Rule only bars an expert's conclusion that the defendant had or didn't have a mental state or condition when it's an element of the crime. So it doesn't prohibit opinions that are merely related to the defendant's mental state, even if they bump up to the line.

### B.

The district court didn't have the benefit of *Diaz* when it excluded portions of Dr. Fahey's testimony. Construing Rule 704(b) narrowly (as we must), we find that it didn't justify excluding her grade-level opinions.

The excluded testimony didn't compel the jury to conclude that Palmer lacked the capacity to knowingly answer question 15 falsely. Although there's little daylight between Fahey's grade-level opinions and an opinion on Palmer's state of mind, there is some. That's all *Diaz* requires.

But the error was harmless. Palmer's trial was about whether he understood question 15. Palmer fails to distinguish the excluded testimony from the plethora of other evidence the jury heard about his language-processing challenges.

Fahey testified extensively about Palmer's limited speech and language abilities. For example, she told the jury that Palmer scored in the first and second percentiles on reading tests. And she said he "performed in the poor to very poor range" on every test she gave him. J.A. 632.

That evidence is as persuasive—if not more so—than what was excluded. Still, the jury found beyond a reasonable doubt that Palmer knowingly answered question 15 falsely.

11

We can't conclude that the cumulative opinion testimony the court excluded would have likely affected the verdict.  So we must find the error harmless.

*AFFIRMED.*